'08 CIV 4222

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESPN, INC.,

                                          Plaintiff,

                        - vs -

QUIKSILVER, INC.,

                                          Defendant.

COMPLAINT

JURY TRIAL DEMANDED

CIVIL NO.: 08 Civ 4222(CM)

ECF CASE

Plaintiff, ESPN, Inc., by its attorneys, Nixon Peabody LLP, as and for its Complaint, alleges as follows:

## INTRODUCTION

1.      This trademark and unfair competition action arises out of Defendant's infringement of Plaintiff's federally-registered X GAMES word mark and common law stylized X GAMES and X trademarks (collectively, the "ESPN X TRADEMARKS").

## PARTIES

**Plaintiff ESPN, Inc.**

2.      ESPN, Inc. ("ESPN") at all relevant times was and is Delaware corporation, with a principal place of business in Bristol, Connecticut. ESPN is the leading multinational, multimedia sports entertainment company featuring the broadest portfolio of multimedia sports assets with over 50 business entities. These media assets include ESPN on ABC, six domestic cable television networks (ESPN, launched in 1979; ESPN2; ESPN Classic; ESPNEWS; ESPN Deportes; ESPNU), ESPN HD, ESPN2 HD and ESPNEWS-HD (high-definition simulcast counterparts of ESPN, ESPN2 and ESPNEWS, respectively), ESPN Regional Television, ESPN

International (31 international networks and syndication), ESPN Radio, ESPN.com, ESPN The

Magazine, ESPN Enterprises, ESPN Zones (sports-themed restaurants), and other growing new

businesses including ESPN360 (Broadband), Mobile ESPN (wireless), ESPN On Demand,

ESPN Interactive and ESPN PPV.  In addition, ESPN has created a number of sporting events

and competitions that cover a large variety of sports and that can be viewed on many of these

media platforms.  Among the most famous of these are the ESPN X Games.

       3.     In the early to mid 1990s, ESPN management decided to devote significant

resources to the creation of an international gathering of alternative sport athletes.  In 1996, the X

Games premiered in front of approximately 200,000 spectators and a live internet broadcast on

ESPN Sportzone (now known as ESPN.com).  By 1997, the inaugural Winter X Games were

broadcast to 198 countries in 21 different languages.   The event had become so popular in that

first year alone that in September, 1997, the "X Games Xperience" was held at Disneyland in

Paris, France.

       4.     From 1996 through the present, the X Games has grown into the behemoth of

alternative sports competitions, and each year the X Games has brought successively greater

attendance records, with both US X Games and qualifying events, and international X Games

competitions.  Representative sports showcased at the X Games are skateboarding,

snowboarding, and surfing.

       5.     One of the X Games' most famous past participants is surfer Kelly Slater, whose

success in both the 2003 and 2004 X Games was widely publicized.

**Defendant Quiksilver, Inc.**

       6.     Defendant Quiksilver, Inc. ("Quiksilver") is a Delaware corporation, with a

principal place of business in Huntington Beach, California.

7.    Upon information and belief, Quiksilver is a large manufacturer of surfwear and other boardsport-related equipment.

8.    Upon information and belief, Quiksilver sponsors around 500 amateur and professional surfers, snowboarders, skiers, and skateboarders.  Among them are surfer Kelly Slater and skateboarder Tony Hawk.

## JURISDICTION

9.    This Court has jurisdiction over the subject matter of this action pursuant to the Lanham Act, as amended, 15 U.S.C. § 1051, et seq., including 15 U.S.C. § 1114 and 15 U.S.C. § 1125, and 28 U.S.C. §§ 1331 and 1338.

10.    This Court has personal jurisdiction over Quiksilver because, among other things, it is publicly traded on the New York Stock Exchange and has caused injury in New York by advertising, soliciting, selling and distributing infringing goods in New York.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(c).

## THE ESPN X TRADEMARKS

12.    Since at least as early as 1996, ESPN has used the X GAMES word mark, and ESPN first registered the X GAMES word mark in 1997.  At this time, ESPN owns four federal registrations for the X GAMES word mark, Registration Nos. 2089996, 2126126, 2211559, and 3117522, covering goods and services in Classes 9, 16, 25, and 41.

13.    ESPN also owns pending trademark applications for its stylized X GAMES mark, for goods in Classes 16 and 28, as well as for its stylized "X" mark, both used since 2005, and depicted below:



Stylized X Mark



Stylized X Games Mark

14.    In addition to its federal applications, ESPN has extensive common law rights in its stylized X GAMES mark, as well as in its stylized "X" mark.

15.    The ESPN stylized X GAMES and X marks are distinctive and have been used extensively by ESPN as indication of source of its goods.

16.    ESPN has affixed its ESPN X TRADEMARKS on goods in commerce for sale both at the hundreds of X Games events as well as on the Internet and in department stores such as JC Penny.  The ESPN X TRADEMARKS appear on shirts, shorts, hats, backpacks, pants, jackets, and other sports apparel.  See Exhibit A.

## QUIKSILVER'S INFRINGEMENT OF THE ESPN X TRADEMARKS

17.    Upon information and belief, Quiksilver sells its products both on the Internet and in stores across New York, the United States and worldwide.

18.    Upon information and belief, in or about 2007, Quiksilver began to willfully use an "X" mark (the "Infringing Mark") confusingly similar to ESPN's stylized X Games and X marks on a line of clothing initially promoted by former X Games participant Kelly Slater.  See Exhibit B.

19.    Upon information and belief, despite protests by ESPN, Quiksilver has since willfully expanded the use of the Infringing Mark, and Quiksilver's apparel and accessories lines are now replete with the Infringing Mark, which appears on its products as well as on its labels, hangtags, and website.  See Exhibit B.

20.    Upon information and belief, Quiksilver began use of the Infringing Mark after ESPN adopted and used the ESPN X TRADEMARKS.

21.    ESPN has not authorized Quiksilver's use of the Infringing Mark.

22.    Quiksilver's use of the Infringing Mark is likely to cause mistake or confusion among consumers, or to deceive consumers, by causing them to believe incorrectly, that Quiksilver's business is related to, associated with, sponsored by, or connected with ESPN and/or ESPN's X Games.  This confusion is compounded by Kelly Slater's association with Quiksilver's products bearing the Infringing Mark, and Quiksilver's sponsorship of other X Games participants that appear on the Quiksilver website, such as surfers Clay Marzo and Julian Wilson and snowboarder Travis Rice.

23.    Quiksilver's use of the Infringing Mark has diluted and will continue to dilute the distinctiveness of the famous and distinctive ESPN X Trademarks.


**FIRST CAUSE OF ACTION**
**(FEDERAL TRADEMARK INFRINGEMENT OF X GAME MARKS 2089996, 2126126, 2211559, AND 3117522 UNDER 15 U.S.C. § 1114(1)(a))**

24.    The allegations of Paragraphs 1 through 23 are realleged as if fully set forth herein.

25.    By virtue of Quiksilver's use of the Infringing Mark, Quiksilver has infringed and interfered with ESPN's trademark rights in and to the federally-registered X GAMES word marks in violation of the Lanham Trademark Act § 32(a), 15 U.S.C. § 1114(1)(a).

26.    Quiksilver's infringement has been willful and deliberate and has caused or is likely to cause mistake or confusion among consumers, or to deceive consumers, by causing

them to believe, incorrectly, that Quiksilver's business is related to, associated with, sponsored by, or connected with ESPN in violation of 15 U.S.C. § 1114(1)(a).

27.    ESPN has created incalculable good will associated with the X GAMES word marks.

28.    By reason of Quiksilver's infringing activities, ESPN has been seriously and irreparably damaged and, unless Defendants are restrained therefrom, ESPN will continue to be so damaged.

29.    ESPN has no adequate remedy at law.

## SECOND CAUSE OF ACTION
## (TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a))

30.    The allegations of Paragraphs 1 through 29 are realleged as if fully set forth herein.

31.    Quiksilver has been and is engaged in trademark infringement and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

25.    Quiksilver's activities have affected interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

32.    By reason of Quiksilver's activities, ESPN has been seriously and irreparably damaged and, unless Quiksilver is restrained therefrom, ESPN will continue to be so damaged.

33.    ESPN has no adequate remedy at law.

## THIRD CAUSE OF ACTION
## (ANTI-DILUTION PURSUANT TO NEW YORK GBL § 360-1)

34.    The allegations of Paragraphs 1 through 33 are realleged as if fully set forth herein.

35.    Quiksilver's use of the Infringing Mark in the conduct of trade constitutes unfair and deceptive practices in violation of Section 360-l of New York State General Business Law.

36.    By reason of Quiksilver's actions, ESPN has been seriously and irreparably injured and, unless Defendants are restrained therefrom, ESPN will continue to be so damaged.

37.    ESPN has no adequate remedy at law.

## FOURTH CAUSE OF ACTION
## (VIOLATION OF NEW YORK COMMON LAW)

38.    The allegations of Paragraphs 1 through 37 are realleged as if fully set forth herein.

39.    Quiksilver's use of the Infringing Mark in the conduct of trade constitutes a violation of New York common law.

40.    ESPN has no adequate remedy at law.

**WHEREFORE,** ESPN demands judgment:

1.    On each of the Causes of Action, preliminarily and permanently restraining and enjoining Defendant and all persons acting in concert with Defendant or purporting to act on their behalf or in active concert or in participation with Defendant, including, but not limited to, their agents, servants, employees, successors or assigns, from infringing the trademarks of ESPN identified herein, from falsely designating the origin, sponsorship or affiliation of Defendant's business and services, from diluting the distinctive quality of the trademarks of ESPN, and from unfairly competing with ESPN in any manner whatsoever;

2.      On the First and Second Causes of Action, pursuant to 15 U.S.C. § 1116,

ordering Defendant to file with the Court and to serve on ESPN's counsel within thirty (30)

days after service of any preliminary injunction or final injunction issued herein, or within

such reasonable time as the Court may direct, a report in writing and under oath, setting forth

in detail the manner and form in which Defendant has complied with such injunction.

4.      On the First and Second Causes of Action, pursuant to 15 U.S.C. § 1117

ordering an award of:

    (a)      Compensatory damages in an amount to be determined at trial arising

out of the foregoing acts of infringement and unfair competition

sustained by reason of said wrongful acts and that said award of

compensatory damages be trebled;

    (b)      Defendant's profits as a consequence of the acts of infringement and

an accounting of said profits;

    (c)      The costs of the action; and

    (d)      Plaintiff's reasonable attorneys' fees incurred herein.

5.      On all Causes of Action, ordering an award of punitive and exemplary

damages against Defendant by reason of Defendant's willful infringement and its deliberate

attempt to play off the goodwill associated with the ESPN X TRADEMARKS, and an award

of costs and attorneys' fees.

6.     For such other relief as the Court deems just.

Plaintiff demands a trial by jury on all issues so triable.

Dated:  May 2, 2008

NIXON PEABODY LLP

By: _____

Frank W. Ryan (FR 0618)
Tamar Y. Duvdevani (TD 7603)
437 Madison Avenue
New York, New York  10023
(212) 940-3000

Attorneys for Plaintiff
ESPN, Inc.

# EXHIBIT A

























# EXHIBIT B

























