UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESPN, INC.,

                          Plaintiff,

              - vs -                          CIVIL NO.: 08 Civ. 4222 (CM) (MHD)

QUIKSILVER, INC.,

                          Defendant.

QUIKSILVER, INC.,

                          Counterclaimant,

              - vs -

ESPN, INC.,

                          Counterdefendant.

**PLAINTIFF AND COUNTERDEFENDANT ESPN, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO QUIKSILVER, INC'S MOTION FOR TRANSFER OF VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)**

NIXON PEABODY LLP
Attorneys for Plaintiff-
Counterdefendant ESPN, Inc.
437 Madison Avenue
New York, New York 10022
(212) 940-3000

Frank W. Ryan
Tamar Y. Duvdevani

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS .................................................................................................................................... 2

    ESPN and New York.......................................................................................................... 2

    ESPN's X Games Team..................................................................................................... 2

    X GAMES Events and Merchandising............................................................................ 5

    Quiksilver and New York ................................................................................................. 6

ARGUMENT .......................................................................................................................... 7

I.   Legal Standard to Transfer Venue Under 28 U.S.C. § 1404(a) ..................................... 7

II.  The Balance of Factors Weighs Heavily Against Transfer ........................................... 8

   A.   The Convenience Of Witnesses and Availability of Process........................................ 8

   B.   The Location Of Relevant Documents And The Relative Ease
       Of Access To Sources Of Proof................................................................................. 12

   C.   The Convenience Of The Parties ............................................................................... 13

   D.   The Locus Of The Operative Facts ........................................................................... 14

   E.   The Relative Means Of The Parties ........................................................................... 17

   F.   The Forum's Familiarity With The Governing Law ................................................... 17

   G.   The Weight Accorded To Plaintiff's Choice Of Forum............................................... 18

   H.   Trial Efficiency And The Interests Of Justice, Based Upon
       The Totality Of The Circumstances......................................................................... 19

CONCLUSION......................................................................................................................... 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Am. Alliance Ins. Co. v. Sunbeam Corp*, 98 Civ. 4703, 1999 U.S. Dist. LEXIS 713 (S.D.N.Y. Jan. 28, 1999) ......................................................................................11

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) ....................................................................10, 12, 15, 17, 18, 19

*Astor Holdings, Inc. v. Roski*, 01 Civ. 1905, 2002 U.S. Dist. LEXIS 758 (S.D.N.Y. Jan. 15, 2002)..............................................................................9, 13

*Cartier v. Micha, Inc.*, 06 Civ. 4599, 2007 U.S. Dist. LEXIS 29785 (S.D.N.Y. Apr. 20, 2007) ....................................................................................................15

*De Jesus v. Nat'l R.R. Passenger Corp.*, 725 F. Supp. 207 (S.D.N.Y. 1989) .............16, 17

*Foot Locker Retail, Inc. v. SBH, Inc.*, 03 Civ. 5050, 2005 U.S. Dist. LEXIS 599 (S.D.N.Y. Jan. 18, 2005).......................................................................13, 17

*Ginsberg v. Gov't Props. Trust, Inc.*, 07 Civ. 365, 2007 U.S. Dist. LEXIS 75771 (S.D.N.Y. Oct. 10, 2007) ...................................................................................8

*Gould Paper Corp. v. Gomez*, 07 Civ. 6087, 2008 U.S. Dist. LEXIS 3047 (S.D.N.Y. Jan. 11, 2008)..................................................................................8

*Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001) ................................18

*JFP Touring, LLC v. Polk Theatre, Inc.*, 07 Civ. 3341, 2007 U.S. Dist. LEXIS 51388 (S.D.N.Y. July 9, 2007) ......................................................................7

*Kiss My Face Corp. v. Bunting*, 02 Civ. 2645, 2003 U.S. Dist. LEXIS 17096 (S.D.N.Y. Sept. 29, 2003).....................................................10, 11, 13, 15, 16

*Matra Et Manurhin v. Int'l Armament Co.*, 628 F. Supp. 1532 (S.D.N.Y. 1986).......16, 17

*Mears v. Montgomery*, 02 Civ. 0407, 2004 U.S. Dist. LEXIS 7836 (S.D.N.Y. May 5, 2004) ...............................................................................8, 11, 13, 18

*NBA Props., Inc. v. Salvino, Inc.*, 99 Civ. 11799, 2000 U.S. Dist. LEXIS 3799 (S.D.N.Y. Mar. 27, 2000) ......................................................10, 11, 15, 17, 18

*PDK Labs, Inc. v. Proactive Labs, Inc.*, 325 F. Supp. 2d 176 (E.D.N.Y. 2004) .................9

*Prudential Sec. Inc. v. Norcom Dev., Inc.*, 97 Civ. 6308, 1998 U.S. Dist. LEXIS 10569 (S.D.N.Y. July 16, 1998) ............................................................................18

*TM Claims Service A/S/O Fuji Photo Film v. KLM Royal Dutch Airlines*, 143 F. Supp. 2d 402 (S.D.N.Y. 2001)........................................................................9

*Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328 (S.D.N.Y. 1998) ...................................16

*Virgin Enters. v. Am. Longevity*, 99 Civ. 9854, 2001 U.S. Dist. LEXIS 2046 (S.D.N.Y. Mar. 1, 2001) ............................................................................13, 14, 15

## FEDERAL STATUTES

28 U.S.C. §1404.............................................................................................................7, 8

## PRELIMINARY STATEMENT

Quiksilver's motion to transfer this action to its hometown is so lacking in legal and factual support that it deserves little consideration by this Court.

Without any apparent investigation into ESPN's contacts with this District, both generally and with regard to the X Games trademarks, Quiksilver concedes that it sells its allegedly infringing goods in New York, yet urges this Court to move this case to California. Had Quiksilver conducted even minimal research, or asked counsel for ESPN where those ESPN employees relevant to this action were located, it would have learned that none are located in the Central District of California, and that most are in New York City, while the remainder work in Connecticut. Quiksilver could also have asked some of its own employees, who have worked with ESPN's X Games team and were aware that they are located in New York City. It did none of these things. Instead, it filed a motion bereft of factual or legal support, failing even to include the proper standard (clear and convincing) that Quiksilver must meet to show that a transfer is appropriate under Rule 1404(a). As a result, this Court is forced to review, and ESPN compelled to oppose, a motion to transfer a case where: (1) ESPN's potential witnesses are located in ESPN's New York City offices; (2) ESPN not only has a "connection" to this District, but six offices housing over 1000 employees; (3) Quiksilver sells its infringing goods in this District, the appropriate test for the "locus of operative facts" factor in trademark infringement actions; (4) Quiksilver concedes that two of the nine relevant factors do not favor transfer; and (5) both parties assert New York common law claims. All of these facts demonstrate that Quiksilver utterly fails to clearly and convincingly demonstrate that this action should be transferred. Indeed, the only fact supporting Quiksilver's motion is that its own bloated witness list contains individuals located in California, which is not legally sufficient to transfer an action under 28 U.S.C. §1404. Quiksilver's motion should be denied.

**FACTS**

<u>ESPN AND NEW YORK</u>

ESPN has six offices in New York City ("The ESPN NYC Offices"). (Declaration of Rick Alessandri dated June 30, 2008 ("Alessandri Decl."), ¶ 3.) These offices are located at the following addresses: (1) 605 3rd Avenue (the "Third Avenue Office"); (2) 77 West 66th Street (the "66th Street Office"); (3) 19 East 34th Street (the "34th Street Office"); (4) 1500 Broadway (the "Broadway Office"); (5) 47 West 66th Street (the "47 West Office"); and (6) 2 Penn Plaza (the "Penn Plaza Office"). (Alessandri Decl. ¶ 3.)

The ESPN NYC Offices house in excess of 1000 ESPN employees and comprise an area of 280,307 square feet. (Alessandri Decl. ¶ 4.) The square footage and employees per office are as follows:

| | | |
|---|---|---|
| a. | Third Avenue Office: | 53,441 square feet on 2 floors, 176 employees. |
| b. | 66th Street Office: | 109,600 square feet on 5 floors, 412 employees. |
| c. | 34th Street Office: | 54,533 square feet on 2 floors, 280 employees. |
| d. | Broadway Office: | 26,108 square feet on 2 floors, 85 employees. |
| e. | 47 West Office: | 29,882 square feet on 2 floors, 90 employees. |
| f. | Penn Plaza Office: | 6743 square feet on 1 floor, 75 employees. |

(Alessandri Decl. ¶ 4.)

<u>ESPN'S X GAMES TEAM</u>

Rick Alessandri is the Managing Director of the X Games franchise, and works out of ESPN's Third Avenue Office. (Alessandri Decl. ¶¶ 1, 5.) Mr. Alessandri's X Games team assists him on all matters pertaining to the X Games franchise, including the development, use, promotion, and expansion of the X Games and its trademarks that form the basis of both parties' claims. (Alessandri Decl. ¶ 5.) The X Games team members work in various ESPN NYC

Offices. (Alessandri Decl. ¶ 6.) The following is a list of those individuals, their titles, and what information they have pertaining to this dispute:

a. Dave Finger, Director, EXPN.com. Mr. Finger works out of the 34th Street Office and has information pertaining to online advertising using the X GAMES MARKS.

b. Kevin Kirksey, Senior Director, Brand Franchises. Mr. Kirksey works out of the 66th Street Office, and has information pertaining to the creation, development, and use of the X GAMES MARKS.

c. Katie Lacey, Senior Vice President, Marketing. Ms. Lacey works out of the 66th Street Office has information pertaining to marketing efforts involving the X GAMES MARKS.

d. Aaron Taylor, Vice President, Marketing. Mr. Taylor works out of the 66th Street Office and has information pertaining to marketing efforts involving the X GAMES MARKS.

e. Chris Brush, Vice President, Brand Extensions and Development. Mr. Brush works out of the 66th Street Office, and has information pertaining to development of the X Games franchise and branding and use of X GAMES MARKS.

f. Kathleen Sullivan, Senior Director, Sports Management. Ms. Sullivan works out of the 66th Street Office and has information pertaining to sales and sponsorships related to X GAMES properties.

g. John Gassner, Senior Director, International X Games. Mr. Gassner works out of the 66th Street Office, and has information pertaining to use of the X GAMES MARKS, particularly as they are used on a global scale.

h. Mascha Jooren, Sponsorship and Marketing Partnership Associate Director. Ms. Jooren works out of the 66th Street Office, and has information pertaining to marketing and sponsorships of the X GAMES MARKS.

i. Steve Cipolla, Vice President, Consumer Products and Licensing. Mr. Cipolla works out of the Third Avenue Office, and has information pertaining to ESPN's licensing of the X GAMES MARKS.

j.  Steve Tedder, Senior Director, Marketing.  Mr. Tedder works out of the Third Avenue Office, and has information pertaining to advertising, licensing, and sponsorship of consumer products bearing the X GAMES MARKS.

k.  Francisco Arenas, Senior Director, Consumer Products Licensing.  Mr. Arenas works out of the Third Avenue Office, and has information pertaining to licensing bearing the X GAMES MARKS.

l.  Chris McClure, Senior Director, Creative Consumer Products.  Mr. McClure works out of the Third Avenue Office, and has information pertaining to consumer products bearing the X GAMES MARKS.

m.  Christine Konyak-Parker, Senior Director, Apparel and Accessories Consumer Products.  Ms. Konyak-Parker works out of the Third Avenue Office, and has information pertaining to X Games soft goods categories, most of which bear the X GAMES MARKS.

n.  Zachary Block, Associate Director, Business Development.  Mr. Block works out of the Third Avenue Office and has information pertaining to business development of the X Games franchise including use of X GAMES marks.

(Alessandri Decl. ¶ 6.)

In addition to ESPN's New York City employees, there are a number of individuals in ESPN's Bristol, Connecticut offices that are also privy to information relevant to ESPN's claims against Quiksilver.  (Alessandri Decl. ¶ 7.)  These ESPN employees are:

a.  Amy Lupo, Senior Director, Marketing & Content.  Ms. Lupo has information pertaining to X Games marketing and public relations.

b.  Rich Feinberg, Vice President of Event Production.  Mr. Feinberg has information pertaining to X GAMES events, including the placement of X GAMES MARKS.

c.  Phil Orlins, Coordinating Producer.  Mr. Orlins has information pertaining to the content of the X Games broadcasts including X GAMES MARKS used therein.  In particular, Phil is the custodian of videos of all of the past X Games competitions.

d.  Chris Stiepock, Vice President and General Manager, X franchise.  Mr. Stiepock has  information pertaining to the production of X Games events.

(Alessandri Decl. ¶ 7.)

X GAMES EVENTS AND MERCHANDISING

      Contrary to Quiksilver's contentions, the X Games is far more than a local California sports competition, but rather a global action sports enterprise. The Summer X Games have been held a total of 13 times, only 5 of which were in Los Angeles, and comparable X Games events have taken place all over the world, including Shanghai, China; Beijing, China; Mexico City, Mexico; Dubai, UAE; and Sao Paulo, Brazil. (Alessandri Decl. ¶ 8 n.1, ¶ 10.) The Winter X Games have taken place in Aspen, Colorado, every winter since 2002, and will take place there again this coming January, 2009 and again in 2010. (Alessandri Decl. ¶ 9.) The Winter X Games is as large an event as the Summer X Games, and the X Games Marks are ubiquitous in Aspen during the event. (Alessandri Decl. ¶ 9.) Some of these events have been held before crowds surpassing 50,000 people, are televised internationally, and streamed through ESPN's website. (Alessandri Decl. ¶ 10.)

      The X Games competitions are only one place where X Games marks are displayed to the public via its placement throughout the events and on X Games merchandise sold at the events. As stated in the Complaint, ESPN sells apparel bearing the X Games trademarks in department stores like JCPenney. (Compl. ¶ 16.) Additionally, X Games apparel, and merchandise such as bikes, fly-box ramps, helmets, bedding, and DVDs, all of which bear the X Games trademarks, are sold in New York and/or nationally by retailers including Target, Wal-Mart, Hallmark (Gold Crown Stores), Walgreens, CVS, Duane Reade, PBTeen, Champs, Eastbay, Famous Footwear, Lenscrafters, and Express Vision. (Alessandri Decl. ¶ 11.) Such products are also promoted or sold online at www.xgamesgear.com, www.espnshop.com, and www.walmart.com. (Alessandri Decl. ¶ 11.).

QUIKSILVER AND NEW YORK

      Contrary to Quiksilver's comment in the opening paragraph of its Preliminary Statement

that the only connection ESPN asserted between Quiksilver and New York is that it is publicly

traded on the New York Stock Exchange, ESPN asserted venue over Quiksilver because it "has

caused injury in New York by advertising, soliciting, selling and distributing infringing goods in

New York." (Compl. ¶ 10.)   Quiksilver admits in its Answer that it sells its products in stores

in New York. (Answer ¶ 17.)

      Additionally, according to Quiksilver's website, Quiksilver products are sold at six

separate locations within New York County, New York. (June 30, 2008 Declaration of Tamar

Y. Duvdevani ("Duvdevani Decl.") Ex. A.) This number includes both independent retailers

and stores solely dedicated to the sale of Quiksilver products. (Duvdevani Decl. Ex. A.)

Quiksilver products are available at four independent retailers within New York County, New

York, as well as at two stores directly owned and operated by Quiksilver in New York City.

(Duvdevani Decl. Ex. A.) Quiksilver products can also be viewed and purchased online in this

District by visiting Quiksilver's website, http://www.quiksilver.com/home/index.jsp#.

(Duvdevani Decl. ¶ 7.) On June 25, 2008, the merchandise photographed in Exhibit B to the

Duvdevani Declaration was purchased at Quiksilver's store on Broadway in lower Manhattan, a

short walk from the Court.

      Moreover, Quiksilver's Chief Executive Officer Bob McKnight, in a book published by

Quiksilver Entertainment, Inc., states:

> We have about 7,500 employees spread over our five major headquarters –
> Huntington Beach, California; Saint Jean de Luz, France; Torquay, Australia;
> Rossignol in Voiron, France; and our sourcing center in Hong Kong – and our
> offices in Brazil, Japan, London, New York and South Africa, and our retail
> stores around the world. . . . . We have close to 500 retail stores from Tokyo to
> Sydney, from New York to London, from Paris to Moscow. . .

(Duvdevani Decl. Ex. D) (emphasis added)  (*See also* Duvdevani Decl. Ex. C.).

## ARGUMENT

## I.    LEGAL STANDARD TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(A)

28 U.S.C. § 1404(a) provides, "'For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.'" *JFP Touring, LLC v. Polk Theatre, Inc.*, 07 Civ. 3341, 2007 U.S. Dist. LEXIS 51388, at *35 (S.D.N.Y. July 9, 2007) (McMahon, J.). "Thus, in order to obtain a transfer of venue, 'the moving party bears the burden of establishing 1) that the action is one that 'might have been brought' in the district to which the movant seeks to have it transferred, and 2) that transfer is appropriate based on the convenience of the parties, the convenience of witnesses and the interests of justice.'" *Id.* There is no dispute that subject matter jurisdiction and personal jurisdiction over both parties exist for this action in both the Southern District of New York and the Central District of California. Thus, the only question before this Court is whether transferring this action is appropriate "based on the balance of convenience to parties and witnesses, and the interests of justice." *Id.* at *36.

In balancing the convenience and fairness of Quiksilver's proposed transfer of this action to its hometown, courts in the Second Circuit are guided by nine factors:

(1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based upon the totality of the circumstances.

*See id.* at *36-37. "Courts should not disturb a plaintiff's choice of forum 'unless the defendants make a clear and convincing showing that the balance of convenience favors defendant['s] choice.'" *Id.* at *36 (quoting *Linzer v. EMI Blackwood Music, Inc.*, 904 F. Supp. 207, 216

(S.D.N.Y. 1995)) (emphasis added). *See also, e.g., Gould Paper Corp. v. Gomez,* 07 Civ. 6087, 2008 U.S. Dist. LEXIS 3047 (S.D.N.Y. Jan. 11, 2008) ("The burden rests on the moving party to make a 'clear and convincing' showing that transfer under Section 1404(a) is proper."); *Ginsberg v. Gov't Props. Trust, Inc.,* 07 Civ. 365, 2007 U.S. Dist. LEXIS 75771, at *47 (S.D.N.Y. Oct. 10, 2007) ("The party moving for a change of venue bears the burden of establishing by clear and convincing evidence that transfer is appropriate."); *Mears v. Montgomery,* 02 Civ. 0407, 2004 U.S. Dist. LEXIS 7836, at *24 (S.D.N.Y. May 5, 2004) ("The party seeking venue transfer bears the significant burden of making a clear and convincing showing that a case should be transferred."). Quiksilver utterly fails to meet this burden.

## II.    THE BALANCE OF FACTORS WEIGHS HEAVILY AGAINST TRANSFER

Contrary to Quiksilver's assertions, not one single factor supports its position that this action should be transferred to the Central District of California, mandating that its motion be denied.

### A.    The Convenience Of Witnesses and Availability of Process

Quiksilver asserts that the "convenience of witnesses" and "availability of process" factors favor transfer because (1) most of its witnesses that have knowledge pertaining to its purported "Gen X Brand" are located in the Central District of California; (2) professional surfer Kelly Slater maintains a California office; (3) other potential third parties live in Australia, Hawaii, and Wyoming, which are closer to California than New York; and (4) it is "unlikely" that ESPN's witnesses will hail from the East Coast, but if they do, they will have to travel from Connecticut. (Quiksilver Br. at 11-13, 15.) The first three of these assertions do not clearly and convincingly award Quiksilver this factor, and the fourth is simply wrong.

Quiksilver supports its assertions by a Declaration from Mitch Milstein, Quiksilver's "General Counsel for Global IP." Under penalty of perjury, Mr. Milstein lists some twenty-six individuals that Quiksilver "expects to call" as witnesses in this trademark action. (Milstein Decl. ¶¶ 5, 7.) Of course, "'[w]hen weighing the convenience of the witnesses, courts must consider the materiality, nature and quality of each witness, not [merely] the number of witnesses in each district.'" *Astor Holdings, Inc. v. Roski*, 01 Civ. 1905, 2002 U.S. Dist. LEXIS 758, at *36 (S.D.N.Y. Jan. 15, 2002) (quoting *TM Claims Service A/S/O Fuji Photo Film v. KLM Royal Dutch Airlines*, 143 F. Supp. 2d 402, 406 (S.D.N.Y. 2001)). The witness descriptions given by Mr. Milstein are fairly duplicative and largely irrelevant to the adjudication of each parties' claims, and appear to be little more than an attempt to bolster Quiksilver's transfer motion. For example, Mr. Milstein lists eight "expected" witnesses for testimony relating to the development of the "Gen X brand" (Fontes, Marre, Anderson, White, Crum, Day, Diamond, Sadeghi), eight more for testimony relating to marketing and use of the "Gen X brand" (Morris, Macias, Craighill, Russell, Holbrook, Kwock, Gibby, Whisenand, Harrison), and three individuals for early work on the "Gen X brand" (McKnight, Buttonshaw, Webb). (Milstein Decl. ¶¶ 5, 7.) This duplicative list evidences a clear attempt to augment a witness list for the tactical purpose of moving the action to Quiksilver's hometown, especially considering the fact that it is rare for so many witnesses to be called in a trademark infringement action. *See, e.g., PDK Labs, Inc. v. Proactive Labs, Inc.*, 325 F. Supp. 2d 176, 183 (E.D.N.Y. 2004) ("The sole substantive dispute in this case is whether Proactive's trademark and trade dress infringe PDK's marks. Resolving such a dispute requires relatively little in the way of witnesses or documents.").

Moreover, Mr. Milstein implies that five third party witnesses listed in his Declaration may not be willing to come to New York to testify. (Milstein Decl. ¶¶ 7 (b, c, d, e and j).) For

example, Mr. Milstein states that he called Ian Votterri, a former operations director for ESPN's Winter X Games, who refused to speak to him without consulting his attorney. "Based on this response," Mr. Milstein concludes that he does not anticipate Mr. Votteri's voluntary attendance at a New York trial. (Milstein Decl. ¶ 7(e).) Yet even if Mr. Votteri or any of these witnesses were actually necessary to this action, which ESPN submits they are not, a declaration of a Quiksilver lawyer speculating that third parties may not attend a New York trial is wholly insufficient to support an argument that third parties are in fact unwilling to attend trial. Rather, affidavits from those witnesses would have been required to give this argument any weight. *See Kiss My Face Corp. v. Bunting*, 02 Civ. 2645, 2003 U.S. Dist. LEXIS 17096, at *11 (S.D.N.Y. Sept. 29, 2003) ("[Defendant] has failed to provide the Court with any affidavits from potential witnesses stating that such witnesses would not voluntarily appear absent transfer."); *NBA Props., Inc. v. Salvino, Inc.*, 99 Civ. 11799, 2000 U.S. Dist. LEXIS 3799, at *25 (S.D.N.Y. Mar. 27, 2000) ("Given the unavailability of process to compel the appearances of California witnesses in New York, defendant asserts that it would have to rely on deposition testimony. However, defendant fails to provide any affidavits from its witnesses stating that the witnesses will not voluntarily appear absent transfer."). Moreover, even if these allegedly relevant witnesses were unwilling to appear at trail, it is well established that deposition testimony is a viable alternative,[1] and despite Quiksilver's rhetoric that some of these individuals are "crucial" and its case would be "severely prejudiced" should these witnesses not appear at trial, it has utterly failed to support such bald assertions. *See Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) ("If any of the Defendants' or Plaintiffs' witnesses are

---

[1]  To the extent necessary, ESPN is willing to depose Quiksilver's California witnesses in the Central District of California.

unavailable at trial, deposition testimony is a viable alternative, and the Defendants are certainly free to depose all of Plaintiffs' employees and investigators.") (citing *Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 209 (S.D.N.Y. 1998) (holding transfer unwarranted where deposition testimony is "an available alternative to live testimony")); *NBA Props.*, 2000 U.S. Dist. LEXIS 3799, at *25 ("Further, even were witnesses to decline to testify, deposition testimony is a viable alternative."); *Am. Alliance Ins. Co. v. Sunbeam Corp*, 98 Civ. 4703, 1999 U.S. Dist. LEXIS 713, at *22 (S.D.N.Y. Jan. 28, 1999) (finding that "because [defendant] has not shown why deposition testimony would be inadequate in this case, [the unavailability of process to compel unwilling witnesses] carries less weight").

Additionally, ESPN has submitted the Declaration of Rick Alessandri, the head of the X Games franchise. Mr. Alessandri explains that he and his entire core team of ESPN employees work in one of ESPN's six New York City offices, while a few others work in ESPN's Bristol, Connecticut offices a train ride away. (Alessandri Decl. ¶¶ 6, 7.) Accordingly, most if not all witnesses ESPN would call in support of its claims or defenses are located in one of these two locations. This fact negates any inconvenience alleged by Quiksilver for its own witnesses, because "to transfer venue would merely shift the burden of inconvenience from defendants' witnesses to plaintiff's witnesses rather than alleviat[e] the burden altogether. <u>Such an outcome weighs against a change of forum.</u>" *Mears*, 2004 U.S. Dist. LEXIS 7836, at *28 (emphasis added); *see also Kiss My Face*, 2003 U.S. Dist. LEXIS 17096, at *10 ("The convenience of the parties does not favor transfer when it would merely shift any inconvenience from defendant to plaintiff.").

Finally, Quiksilver's presumption that "numerous witnesses" are located in Los Angeles because the X Games have been held there has no merit. By the same rationale, "numerous

witnesses" could be in Aspen, Colorado, where the Winter X Games have been held every year since 2002, or for that matter any other location where the X Games are held, including China, Brazil, Dubai, and Mexico. (Alessandri Decl. ¶¶ 9, 10.) Indeed, under Quiksilver's theory, witnesses could be called who work at various Target, Wal-Mart, Hallmark (Gold Crown Stores), Walgreens, CVS, Duane Reade, PBTeen, Champs, Eastbay, Famous Footwear, Lenscrafters, and Express Vision retailers across the nation, as ESPN merchandise bearing the X Games trademarks are sold there. (Alessandri Decl. ¶ 11.) Yet none of those locations houses ESPN's X Games team and their documents: only New York holds that distinction. (Alessandri Decl. ¶ 6.) Quiksilver's effort to link one X Games competition's location to the location of witnesses and documents relevant to a trademark claim is unsupported by law and should be summarily dismissed.[2]

Therefore, the "convenience of witnesses" and "availability of process" factors do not favor transfer of this action, and Quiksilver has failed to show in any way, let alone "clearly and convincingly," that they do.

B.    The Location Of Relevant Documents And The Relative Ease Of Access To Sources Of Proof

Quiksilver asserts that its documents are in California. (Quiksilver Br. at 14.) However, ESPN's documents are largely in New York, with others in Connecticut. (Alessandri Decl. ¶¶ 6, 7.) Because any inconvenience Quiksilver would incur in shipping its documents would merely be transferred to ESPN should the case be transferred, this factor does not support Quiksilver's motion. *See Am. Eagle Outfitters*, 457 F. Supp. 2d at 478 ("The Plaintiffs' documents are in

---

[2]    For the same reason, the entirety of the Declaration of Jennifer L. Barry, which is comprised of cherry-picked bits of internet research linking the X Games to Quiksilver's chosen forum, should be disregarded.

New York, Defendants' in California. The location of documents and records 'is not a compelling consideration when records are easily portable.'") (citing *Astor Holdings*, 2002 U.S. Dist. LEXIS 758, at *37); *Kiss My Face*, 2003 U.S. Dist. LEXIS 17096, at *7-8. Moreover, Quiksilver has not demonstrated how, in this age of e-discovery, and given its acknowledged means, transportation of documents would in any way be burdensome. *See Virgin Enters. v. Am. Longevity*, 99 Civ. 9854, 2001 U.S. Dist. LEXIS 2046 (S.D.N.Y. Mar. 1, 2001) ("A defendant's assertion that documents are located in the transferee forum is entitled to little weight in the absence of a detailed showing as to the burden that defendant would incur in the absence of transfer."). This factor also clearly does not support transfer.

C.    The Convenience Of The Parties

For this factor, Quiksilver presents no legal support, reiterates its argument as to its California witnesses, and adds that it would have no access to "company offices and personnel if forced to litigate here." (Quiksilver Br. at 14-15.) Quiksilver's argument is unavailing for several reasons.

First, as discussed above, Quiksilver's assertions about its own witnesses are not sufficient grounds to transfer this action due to the duplicative nature of the list of individuals it proffers, and the fact that deposition testimony is a viable alternative should any of those individuals actually be necessary. (*See* Point II(A) above.) Second, despite Quiksilver's erroneous presumptions, ESPN's witnesses are located mainly in New York, with several employees located in Connecticut. As previously discussed, swapping Quiksilver's inconvenience for ESPN's does not support transfer. *See Mears*, 2004 U.S. Dist. LEXIS 7836, at *27-28. Third, if any of Quiksilver's purported witnesses are actually necessary at trial, those individuals will not have to travel anywhere until the actual trial, *see, e.g., Foot Locker Retail, Inc. v. SBH, Inc.*, 03 Civ. 5050, 2005 U.S. Dist. LEXIS 599, at *27-28 (S.D.N.Y. Jan. 18, 2005),

and ESPN has little doubt that Latham & Watkins (whose largest office is located in Manhattan) would offer visiting office space to Quiksilver's personnel if it proves necessary for any of them to travel here for trial, not to mention that Quiksilver's CEO states that Quiksilver has an office in New York City. (Duvdevani Decl. Ex. D). Accordingly, this factor also fails to clearly and convincingly support transfer.

     D.    The Locus Of The Operative Facts

     Quiksilver asserts that "there are no facts of this case that are particular to New York," and that due to the fact that the Summer X Games have been held in Los Angeles over the past few years and Quiksilver created the infringing mark there, "an overwhelming proportion" of the operative facts occurred there. As discussed above, Quiksilver is simply incorrect about what has occurred in this District, as the vast majority of ESPN employees who work on all matters pertaining to the X Games trademarks are stationed in one of ESPN's six New York City Offices. Quiksilver also fails to acknowledge that this dispute is not about the X Games events, but rather the X Games trademarks, and that X Games apparel and merchandise are sold in retailers nationally, rendering the location of X Games events even less relevant. (Alessandri Decl. ¶ 11.)

     Quiksilver's more critical error, however, is that it fails to use the relevant standard in assessing this factor. When a party moves to transfer a trademark infringement action under 28 U.S.C. § 1404(a), this District is to be considered a locus of operative facts "even if the defendants' primary place of business is elsewhere and most of its sales are conducted elsewhere, so long as the plaintiff sufficiently alleges that defendants have engaged in relevant conduct in this district." *Virgin Enters.*, 2001 U.S. Dist. LEXIS 2046, at *34-35. ESPN clearly alleges in its Complaint that Quiksilver sells its allegedly infringing goods in New York (Complaint ¶ 10), and Quiksilver admits to this fact both in its Answer and via its Chief Executive Officer.

(Quiksilver Br. at 13; Answer ¶ 17; Duvdevani Decl. Ex. D.)  It is well established law that the "locus of operative facts" factor in trademark actions "weighs in favor of maintaining the original venue where the defendant sells products 'accused of infringement in New York on its website and through New York dealers and distributors.'" *Virgin Enters.*, 2001 U.S. Dist. LEXIS 2046, at \*34-35; *see also Cartier v. Micha, Inc.*, 06 Civ. 4599, 2007 U.S. Dist. LEXIS 29785, at \*20 (S.D.N.Y. Apr. 20, 2007) ("While defendants' alteration of Cartier watches allegedly occurred in the Southern District of California, trademark infringement claims arise in the judicial district where consumer confusion took place.") (citing *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. N.Y. 1956) ("[I]n cases of trade-mark infringement and unfair competition, the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's.")); *Am. Eagle Outfitters*, 457 F. Supp. 2d at 477 ("In trademark infringement cases, courts in this District have found that the locus of operative facts weighs in favor of maintaining the original venue where the defendant sells the allegedly infringing products in that forum."); *Kiss My Face*, 2003 U.S. Dist. LEXIS 17096, at \*8-10 ("In actions alleging trademark infringement or unfair competition, courts in this district have held the locus of operative facts to be in the initially chosen forum if acts of infringement, dilution, or unfair competition occur in that forum."); *Student Advantage, Inc. v. Int'l Student Exch. Cards Inc.*, 00 Civ. 1971, 2000 U.S. Dist. LEXIS 13138, at \*21-22 (S.D.N.Y. Sep. 13, 2000) (finding locus of operative facts to be in the Southern District of New York where defendant sold business cards in New York via the internet and through third parties, despite the fact that defendant was an Arizona corporation with its principle place of business in Arizona); *NBA Props.*, 2000 U.S. Dist. LEXIS 3799, at \*10

("In an action for trademark infringement and unfair competition, the initial forum is the locus of the operative facts if the allegedly infringing products are sold in that forum, even though the defendant manufactures the allegedly infringing product in the transferee forum.").

Like the defendant in *Kiss My Face*, Quiksilver does not dispute that its products are sold in New York, but rather that the proposed transferee district is a more appropriate venue because its merchandise is produced there and then ultimately sold in several states, including New York. *See Kiss My Face*, 2003 U.S. Dist. LEXIS 17096, at *8-9. Judge Casey explained in *Kiss My Face* that such facts are not germane to a transfer motion for a trademark case, as they turn on whether infringement, dilution, or unfair competition have occurred in the transferor forum. *See id.* "Thus, if the allegedly infringing products are sold within the Southern District of New York, even if sold elsewhere, there exists a sufficient connection with this District." *Id.* at *9-10 (emphasis added) (citing *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998) (concluding that locus of operative facts was in New York despite the fact that the allegedly infringing products were manufactured in Colorado)). "Here, given that this is a trademark infringement case, the fact that Defendant sells products in New York establishes a sufficient connection with this District. For this reason, Defendant has not sufficiently demonstrated that this factor weighs in favor of transfer." *Id.* at *10 (internal fact citations omitted).

Quiksilver, for its part, cites to two decisions from the 1980s, *Matra Et Manurhin v. Int'l Armament Co.*, 628 F. Supp. 1532 (S.D.N.Y. 1986), and *De Jesus v. Nat'l R.R. Passenger Corp.*, 725 F. Supp. 207 (S.D.N.Y. 1989). (Quiksilver Br. at 13, 14.) Neither case supports transferring this matter to the Central District of California. In *Matra*, the defendant successfully obtained a transfer from New York to Virginia principally because neither party had an office in New York (ESPN has 6), all the U.S. witnesses lived in Virginia, and a suit involving the identical

trademark was already pending in Virginia. *See Matra*, 628 F. Supp. at 1534. *De Jesus* was a Federal Employees Liability Act case, where plaintiff brought suit in the Southern District of New York against a New Jersey-based defendant which sought a transfer to New Jersey. In that case, however, plaintiff lived in New Jersey, worked in New Jersey, and was treated at a medical center in New Jersey for the accident at issue which occurred in New Jersey, and both plaintiff's supervisor and the eyewitness were New Jersey residents. *See De Jesus*, 725 F. Supp. at 208. The sole connection to New York in *De Jesus* was the fact that the defendant was doing business in New York. *See id.* In sum, these cases are not remotely on point. Hence, this factor heavily tips against transfer.

E.   The Relative Means Of The Parties

Quiksilver concedes that this factor does not favor transfer of this action. (Quiksilver Br. at 16.) ESPN agrees.

F.   The Forum's Familiarity With The Governing Law

Quiksilver argues that the parties' New York state law claims have no bearing on a transfer decision. (Quiksilver Br. at 16.) This is incorrect. Where a complaint alleges Lanham Act and related New York state law claims, this factor favors maintaining the action in the Southern District of New York. *See, e.g., Am. Eagle Outfitters*, 457 F. Supp. 2d at 479 (Where trademark complaint asserted claims under N.Y. Bus. Corp. Law § 360(1) and N.Y. Bus. Corp. Law § 349, the "forum's familiarity with governing law supports retention of the action."); *Foot Locker Retail*, 2005 U.S. Dist. LEXIS 599, at *30 ("The Court assumes that a federal court in Missouri has as much familiarity with federal trademark law as it does. However, having presided over many diversity cases involving New York law, this Court is undoubtedly more familiar with the law governing Plaintiff's state and common law claims than a Missouri federal court would be. Thus, this factor weighs strongly against transfer."); *NBA Props.*, 2000 U.S.

Dist. LEXIS 3799, at *26 ("This factor strongly favors retention of the action in this district.

Where, as here, there are state law claims, the 'forum's familiarity with governing law' supports

retention of the action."). Quiksilver's legal support of its assertions are not on point, and in fact

one of the two, *Prudential Sec. Inc. v. Norcom Dev., Inc.*, 97 Civ. 6308, 1998 U.S. Dist. LEXIS

10569 (S.D.N.Y. July 16, 1998), denied the transfer motion. Accordingly, this factor is not

"neutral," as Quiksilver contends, but rather affirmatively weighs against transfer of venue.

      G.    The Weight Accorded To Plaintiff's Choice Of Forum

      Quiksilver argues that ESPN's choice of forum should be given diminished weight

(Quiksilver Br. at 16), and cites two cases not remotely on point given that (1) ESPN has six

offices and over 1000 employees in New York, (2) operates its X Games franchise out of New

York, and (3) retains nearly all of its relevant documents and witnesses in New York (Alessandri

Decl. ¶¶ 3, 4, 6). Contrary to Quiksilver's understanding, a "plaintiff's choice of forum . . . is

afforded greater deference when 'it was motivated by legitimate reasons, ... and diminishing

deference ... to the extent it was motivated by tactical advantage.' This is true regardless of

whether the plaintiff chose a forum other than that where he is domiciled, as long as the choice is

based on legitimate reasons." *Mears*, 2004 U.S. Dist. LEXIS 7836, at *33-34. (citing *Iragorri v.*

*United Technologies Corp.*, 274 F.3d 65, 73 (2d Cir. 2001)).

      Quiksilver irresponsibly asserts that none of the operative facts "has any direct

connection to New York" and that this District has no "connection to the parties." (Quiksilver

Br. at 1.) At best, these statements were presented to this Court with no investigation as to what

connection ESPN and the X Games actually has to New York. As set forth in the *Facts Section*

above, ESPN has multiple offices and over a thousand employees in Manhattan, which includes

numerous members of the X Games team and its leader Rick Alessandri. *See Am. Eagle*

*Outfitters*, 457 F. Supp. 2d at 479 ("The Defendants have contended that the Plaintiffs' choice of

forum is not entitled to deference because Plaintiffs have engaged in forum shopping. However, most of AEO's witnesses are in fact located in New York or substantially closer to New York than California, rendering Plaintiffs' election to file suit in New York fair, reasonable and deserving of the deference traditionally afforded to a plaintiff. This factor weighs strongly in favor of denying the Defendants' motion to transfer."). Indeed, several Quiksilver employees *know* this to be the case, as they have dealt directly with ESPN's New York employees in preparation for past X Games events that Quiksilver sponsored. (June 26, 2008 Declaration of Matt Gizzi ¶¶ 4, 5 Ex. A.) Accordingly, ESPN's choice of the Southern District of New York is entitled to substantial weight.

H.    Trial Efficiency And The Interests Of Justice, Based Upon The Totality Of The Circumstances.

Quiksilver concedes that this factor does not favor transfer of this action. (Quiksilver Br. at 17.). *See, e.g., Am. Eagle Outfitters*, 457 F. Supp. 2d at 479 ("The Defendants . . . have conceded that both this district and the Central District of California are 'equally equipped' to handle this case and that there is no 'significant disparity in docket size between the fora.' Because this Court has already granted Plaintiffs' application for temporary relief and has dealt with the instant motion, and is, therefore, familiar with the claims alleged, judicial economy is served by keeping venue in this district. Thus, this factor does not favor California as the proper venue."). ESPN agrees.

In sum, Quiksilver has conceded that two of the nine factors do not favor transfer, and as explained above, the remaining factors support maintaining the action in New York. Because Quiksilver has failed to meet its burden to clearly and convincingly show that the balance of convenience favors the defendants, Quiksilver's motion should be denied.

## CONCLUSION

For the reasons set forth above, ESPN respectively requests that this Court deny

Quiksilver's motion to transfer venue.


Dated: New York, New York
June 30, 2008

                    NIXON PEABODY LLP


                    By: _/s/ Frank Ryan_____

                    Frank W. Ryan (FR 0618)
                    Tamar Y. Duvdevani (TD 7603)
                    437 Madison Avenue
                    New York, New York  10023
                    (212) 940-3000
                    (212) 940-3111

                    Attorneys for Plaintiff- Counterdefendant
                    ESPN, Inc.

11055888.102