UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESPN, INC.,<br><br>                        Plaintiff,<br>   v.<br>QUIKSILVER, INC.,<br><br>                        Defendant. | 08 Civ. 4222 (CM) (MHD)<br>ECF Case |
| QUIKSILVER, INC.,<br><br>                        Counterclaimant,<br>   v.<br>ESPN, INC.,<br><br>                        Counterdefendant. | |

**DEFENDANT AND COUNTERCLAIMANT QUIKSILVER, INC.'S
REPLY IN SUPPORT OF ITS MOTION FOR TRANSFER OF VENUE TO THE
CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A)**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

    A. The Witness Convenience and Availability of Process Factors Weigh Decisively in Favor of Transfer ................................................................. 2

        1. Quiksilver Has Identified Numerous Critical Third-Party Witnesses ............................................................................................. 2

        2. Several of the Crucial Third-Party Witnesses Have Already Indicated an Unwillingness to Travel to New York for Trial ................ 2

        3. ESPN's Criticisms of Quiksilver's Witness Information is Misplaced ....................................................................................... 5

        4. Quiksilver Was Not Required to Obtain Declarations From all of the Third-Parties ................................................................... 6

        5. ESPN Fails to Address Other Potential Third-Party Witnesses ..................................................................................... 8

    B. The Appropriate Locus of Operative Facts Factor Also Favors Transfer ................................................................................................. 8

    C. Quiksilver Has Documents and Evidence That Will be Difficult to Transport ............................................................................................ 9

    D. ESPN's Choice of Forum Should Be Afforded Little Weight ............................. 9

    E. The Remaining Factors Are Neutral, Or Favor Transfer ................................... 10

III. CONCLUSION ................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Am. Alliance Ins. Co. v. Sunbeam Corp.*
No. 98 Civ. 4703 (LMM), 1999 U.S. Dist. LEXIS 713
(S.D.N.Y. Jan. 28, 1999)...................................................................................................... 4

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*
457 F. Supp. 2d 474 (S.D.N.Y. 2006)................................................................................. 4

*Am. Steamship Owners Mut. Protection and Indem. Ass'n, Inc.*
*v. LaFarge N. America, Inc.*
474 F. Supp. 2d 474 (S.D.N.Y. 2007)................................................................................. 4

*Berman v. Informix Corp.*
30 F. Supp. 2d 653 (S.D.N.Y. 1998).................................................................................. 2

*Big Apple Pyrotechnics & Multimedia, Inc. v. Sparktacular, Inc.*
No. 05 Civ. 9994 (KMW), 2007 U.S. Dist. LEXIS 17163
(S.D.N.Y. Mar. 9, 2007) ..................................................................................................... 1

*Calay Sys., Inc. v. Barrister Info. Sys. Corp.*
No. 89 Civ. 1155 (MBM), 1989 U.S. Dist. LEXIS 6923
(S.D.N.Y. June 22, 1989).................................................................................................... 3

*Commercial Solvents Corp. v. Liberty Mut. Ins. Co.*
371 F. Supp. 247 (S.D.N.Y. 1974)..................................................................................... 3

*Factors Etc., Inc. v. Pro Arts, Inc.*
579 F.2d 215 (2d Cir. 1978)................................................................................................ 7

*G. Angel, Ltd. v. Camper & Nicholsons USA, Inc.*
No. 06 Civ. 3495 (PKL), 2008 U.S. Dist. LEXIS 9442
(S.D.N.Y. Feb. 8, 2008)....................................................................................................... 7

*Gulf Oil Corp. v. Gilbert*
330 U.S. 501, 67 S. Ct. 839 (1947)..................................................................................... 3

*ITC Ltd. v. Punchgini, Inc.*
482 F.3d 135 (2d Cir. 2007)........................................................................................... 6, 8

*January Enters. v. Buena Vista TV*
41 U.S.P.Q. 2d 1959 (S.D.N.Y. 1997)............................................................................ 10

*JFP Touring LLC v. Polk Theatre, Inc.*
No. 07 Civ. 3341 (CM), 2007 U.S. Dist. LEXIS 51388
(S.D.N.Y. July 9, 2007) ...................................................................................................... 1

*Kiss My Face Corp. v. Bunting*
No. 02 Civ. 2645 (RCC), 2003 U.S. Dist. LEXIS 17096
(S.D.N.Y. Sept. 30, 2003)................................................................................................... 7

*NBA Props., Inc. v. Salvino, Inc.*
No. 99 Civ. 11799 (AGS), 2000 U.S. Dist. LEXIS 3799
(S.D.N.Y. Mar. 27, 2000) .......................................................................................... 4, 7, 9

*PDK Labs, Inc. v. Proactive Labs, Inc.*
325 F. Supp. 2d 176 (E.D.N.Y. 2004) ............................................................................... 6

*Person's Co. v. Christman*
 900 F.2d 1565 (Fed. Cir. 1990)..........................................................................................5
*Rodgers v. Nw. Airlines, Inc.*
 202 F. Supp. 309 (S.D.N.Y. 1962)......................................................................................1
*Royal Ins. Co. of Am. v. Tower Records, Inc.*
 No. 02 Civ. 2612 (PKL), 2002 U.S. Dist. LEXIS 20109
 (S.D.N.Y. Oct. 22, 2002) ....................................................................................................2
*Soto v. Bey Transp. Co.*
 No. 95 Civ. 9329 (PKL), 1997 U.S. Dist. LEXIS 10473
 (S.D.N.Y. July 21, 1997) ....................................................................................................2

I.      **INTRODUCTION**

The critical transfer factors in this case are the convenience of the third-party witnesses and the availability of process for unwilling witnesses. Both factors weigh decisively in favor of transfer.

Contrary to the impression given by ESPN, this case is not solely about whether the concurrent use of the parties' trademarks creates a likelihood of confusion. As is absolutely clear from Quiksilver's counterclaims, the threshold and potentially decisive issue in this case is Quiksilver's status as the senior user of the X-related trademarks. Quiksilver has identified 10 third-party witnesses that possess evidence that it expects to rely upon to prove priority to those marks, and has also identified a third-party ESPN licensee that likely possesses relevant information. ESPN cites in its Complaint four athletes as being relevant to its claims. All 15 of these third-parties are located in the Central District of California, or live closer to the Central District of California than to the Southern District of New York. On the other hand, ESPN apparently is unaware of *any* third-party witnesses that are located in New York, or that would find New York to be more convenient than Southern California for this litigation.

Thus, far from deserving little consideration, this motion should be granted based on the convenience of all of the third-party witnesses and the lack of availability of service of process on these third-parties.[1] The remaining factors also favor transfer, or are neutral.

---

[1] While this Court has stated that a plaintiff's choice of forum will not be disturbed absent a clear and convincing showing that the balance of convenience favors the defendant's choice, *see JFP Touring LLC v. Polk Theatre, Inc.*, No. 07 Civ. 3341 (CM), 2007 U.S. Dist. LEXIS 51388, at *36 (S.D.N.Y. July 9, 2007), other courts in the Southern District have used a preponderance of the evidence standard. *See, e.g.*, *Big Apple Pyrotechnics & Multimedia, Inc. v. Sparktacular, Inc.*, No. 05 Civ. 9994 (KMW), 2007 U.S. Dist. LEXIS 17163, at *28 (S.D.N.Y. Mar. 9, 2007) (moving party "must prove by a preponderance of the evidence that a change of venue is warranted") (*citing Rodgers v. Nw. Airlines, Inc.*, 202 F. Supp. 309, 312 (S.D.N.Y. 1962)). Regardless of the standard, however, Quiksilver has met its burden.

## II. ARGUMENT

### A. The Witness Convenience and Availability of Process Factors Weigh Decisively in Favor of Transfer

#### 1. Quiksilver Has Identified Numerous Critical Third-Party Witnesses

The convenience of the witnesses factor "is probably the single-most important factor in the analysis of whether transfer should be granted." *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998). In this case, the witness convenience factor comes down to third-party witnesses. These third parties are extremely relevant to the issue of which party has priority over the X-related trademarks. *See* Milstein Decl. Quiksilver has identified 10 key third-party witnesses, nine of whom are in Southern California, and all of whom are closer to California than to New York. *See* Milstein Decl. ¶ 7 (nine witnesses in Southern California, one in Hawaii). ESPN, by contrast, has not identified *any* third-party witnesses located in New York.

Not being able to point to a single third-party witness that would find New York to be a more convenient forum than the Central District of California, ESPN tries to shift the focus of this factor to party witnesses, claiming that it has numerous employees that were involved in the X Games and work out of ESPN's offices in New York or Bristol, Connecticut. ESPN argues that transferring this case would merely shift the inconvenience from Quiksilver to ESPN. But the focus of the convenience factor is on third-party witnesses, not party witnesses. *See Royal Ins. Co. of Am. v. Tower Records, Inc.*, No. 02 Civ. 2612 (PKL), 2002 U.S. Dist. LEXIS 20109, at *14 (S.D.N.Y. Oct. 22, 2002) ("convenience of a non-party witness is given greater weight than a party witness"); *Soto v. Bey Transp. Co.*, No. 95 Civ. 9329 (PKL), 1997 U.S. Dist. LEXIS 10473, at *10 (S.D.N.Y. July 21, 1997) ("The Court gives the inconvenience of party witnesses less weight than it does that of nonparty witnesses").

#### 2. Several of the Crucial Third-Party Witnesses Have Already Indicated an Unwillingness to Travel to New York for Trial

Quiksilver, of course, cannot guaranty that *any* third-party witnesses would travel to New York to attend trial, without the compulsion of a subpoena. Moreover, two third-party

witnesses have already indicated an unwillingness to travel to New York (Messrs. Whisenand and Sadeghi), a third third-party witness has already expressed concern regarding obtaining consent from his employer to travel to New York (Mr. White), and a fourth third-party witness has refused to speak to Quiksilver altogether (Mr. Votteri).  Milstein Decl. ¶ 7 (c), (d), (e), (j).  All of these witnesses are expected to testify regarding Quiksilver's priority of use of the X-related trademarks at issue in this case.  *Id*. at ¶¶ 6, 7.

ESPN suggests that this Court should not be concerned with whether the third-party witnesses will attend the trial, because their trial testimony can be admitted through depositions.  Opp. at 10-11.  This argument is disingenuous.  Indeed, since ESPN apparently does not intend to rely on any third-party witness testimony, the hardship of having to establish critical facts at trial through deposition testimony, rather than live testimony, would fall solely on Quiksilver.  ESPN would suffer *no* commensurate disadvantage, however, if the case were transferred to the Central District of California, as all of its witnesses are ESPN employees and would be available to testify at a trial in California.  The Supreme Court has noted the disparity in quality of testimony that Quiksilver would suffer, observing that "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511, 67 S. Ct. 839, 844 (1947) (addressing the pre-§ 1404(a) application of the forum non conveniens doctrine).

Moreover, a transfer is appropriate when key third-party witnesses can only be compelled to testify in the transferee district.  *See, e.g.*, *Calay Sys., Inc. v. Barrister Info. Sys. Corp.*, No. 89 Civ. 1155 (MBM), 1989 U.S. Dist. LEXIS 6923, at *6 (S.D.N.Y. June 22, 1989) ("Transfer is especially important where a non-party witness resides outside the subpoena power of the chosen forum."); *Commercial Solvents Corp. v. Liberty Mut. Ins. Co.*, 371 F. Supp. 247, 250 (S.D.N.Y. 1974) ("Requiring a party to try his case with depositions because the place of trial is such as to prevent the party from compelling attendance of material witnesses is unacceptable when the case could be transferred to a district where attendance could be

compelled and which would be convenient in other respects for both parties. Consistent with this principle courts generally transfer cases when important witnesses cannot be compelled to testify in the forum, but could be subpoenaed in the transferee court.").

The cases cited by ESPN to support its position that deposition testimony is a "viable alternative" to live testimony are inapposite. In *American Eagle Outfitters*, the defendant failed to identify any witnesses who were located outside New York, much less provide a description of their anticipated testimony or availability, so the court could not evaluate the relative importance of their testimony. *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474 (S.D.N.Y. 2006). The *American Eagle Outfitters* court had already issued a preliminary injunction before the filing of the transfer motion, a fact that is not present here. *Id.* at 476. In the *NBA Properties* case, the defendant failed to provide any specific information about its third-party witnesses, including whether they would appear for trial in New York. *NBA Props., Inc. v. Salvino, Inc.*, No. 99 Civ. 11799 (AGS), 2000 U.S. Dist. LEXIS 3799, at *25 (S.D.N.Y. Mar. 27, 2000). The final case cited by ESPN, *American Alliance*, involved very few witnesses and an even number of third-party witnesses on each side. The court in that case found that the attendance of witnesses factor weighed slightly in favor of transfer, but further found that weight somewhat diminished by the defendant's failure to address why deposition testimony would be inadequate. *Am. Alliance Ins. Co. v. Sunbeam Corp.*, No. 98 Civ. 4703 (LMM), 1999 U.S. Dist. LEXIS 713, at *22-23 (S.D.N.Y. Jan. 28, 1999).

Contrary to ESPN's position, courts have generally held, and common sense dictates, that deposition testimony is inferior to live testimony at trial. *See, e.g.*, *Am. Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. LaFarge N. America, Inc.*, 474 F. Supp. 2d 474, 485 (S.D.N.Y. 2007) (Judge Haight observing that deposition testimony would "clearly be second-best to [the witnesses'] live testimony"). The third-party witnesses Quiksilver intends to call are critical to its case, including several of the original designers of the Gen X Brand. This testimony should not be relegated to choppy deposition excerpts.

Quiksilver also needs the testimony of Alan Gibby, the videographer who met

with ESPN personnel and introduced them to Quiksilver's Gen X concept, which ESPN later appropriated for its X Games. Milstein Decl., ¶ 7(b). Mr. Gibby's testimony is a key piece of evidence regarding ESPN's intent in adopting its X Games Marks, and Quiksilver should not be forced to resort to his deposition testimony at trial.

      3.    <u>ESPN's Criticisms of Quiksilver's Witness Information is Misplaced</u>

Not being able to identify any third-party witnesses local to New York, ESPN goes on the attack, accusing Quiksilver of "augment[ing] a witness list for the tactical purpose of moving the action to [its] hometown" by including a list of 23[2] witnesses (13 employees and 10 third parties). In the face of ESPN's own 19-person witness list, ESPN fails to explain how or why Quiksilver's witness list is somehow "tactical."

ESPN then claims that Quiksilver's witness descriptions are "fairly duplicative" and "largely irrelevant to the adjudication of each parties' [sic] claims." Opp. at 9. As Quiksilver detailed at length in its Counterclaims, its position is that it is the senior user of the Gen X Brand. Moreover, that senior use began *over two decades ago*. With that much time to cover, it is not surprising that Quiksilver will need several witnesses to discuss similar topics over different periods of time, and it accordingly included information in its witness list regarding each witness' tenure at the company. In addition, the Gen X Brand was used on several different product lines, so more than one witness would be necessary to discuss these different product lines (*e.g.*, boardshorts vs. wintersports gear). It should be noted that ESPN felt it was appropriate to have duplicative witnesses for various topics, including four witnesses regarding its marketing efforts.

In addition, ESPN lists as a witness John Gassner, Senior Director of the International X Games, because he "has information pertaining to the use of the X GAMES MARKS, particularly as they are used on a global scale." *Id.* Since international use of a

---

[2] ESPN claims that Mr. Milstein's declaration "lists some twenty-six individuals that Quiksilver 'expects to call' as witnesses." Opp. at 9. Mr. Milstein's declaration contains 23 witnesses, made up of 13 party witnesses and 10 third parties.

trademark is generally not relevant evidence in a Lanham Act trademark infringement case, *see, e.g.*, *Person's Co. v. Christman*, 900 F.2d 1565, 1568-69 (Fed. Cir. 1990), it is unclear why Mr. Gassner was identified as a witness. Mr. Gassner is located in ESPN's New York office.

ESPN next argues that "it is rare for so many witnesses to be called in a trademark infringement action," citing a single District Court case—*PDK Labs*—which is easily distinguished. In *PDK Labs*, the court noted that the *sole* dispute was whether the defendant's mark infringed the plaintiff's mark. *PDK Labs, Inc. v. Proactive Labs, Inc.*, 325 F. Supp. 2d 176, 183 (E.D.N.Y. 2004). Here, by contrast, Quiksilver is asserting senior rights in the mark, a requisite threshold issue that must be resolved before the question of infringement would even be addressed. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154 (2d Cir. 2007) ("Preliminary to making [a] showing [of likelihood of confusion], however, a plaintiff must demonstrate its own right to use the mark . . . in question."). Priority of rights can be a factually intensive inquiry, which requires significant witness testimony and documentary evidence. Moreover, ESPN does not explain why it needs 19 witnesses to support its infringement claim, if it truly believes that few witnesses need to be called in an infringement action.

    4.    <u>Quiksilver Was Not Required to Obtain Declarations From all of the Third-Parties</u>

In a final attempt to lessen the impact of the numerous third-party witnesses, ESPN challenges Quiksilver's submission of a declaration from its in-house counsel, Mitch Milstein, regarding Quiksilver's witnesses and their availability to testify. In doing so, ESPN erroneously argues that Quiksilver was required to submit affidavits from each of the third-party witnesses who were unwilling or unavailable to testify at trial.

The majority of courts (including most of the cases cited by ESPN in its brief) have held that the moving party is only required to provide a detailed list of its expected witnesses, a description of their testimony, and whether they are available for trial. Indeed, the Second Circuit has stated as much, holding that the moving party "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover."

*Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978). This is exactly what Quiksilver did through Mr. Milstein's declaration.

In addition, recently Judge Leisure expressly stated that affidavits from each witness are *not* required. *See G. Angel, Ltd. v. Camper & Nicholsons USA, Inc.*, No. 06 Civ. 3495 (PKL), 2008 U.S. Dist. LEXIS 9442, at *13 (S.D.N.Y. Feb. 8, 2008) ("A party moving for transfer of venue for the convenience of witnesses is not required to submit an affidavit from each witness.").

ESPN miscites several cases to support its erroneous proposition. In *Kiss My Face*, the defendant "failed to supply the Court with any list, detailed or otherwise" about her witnesses. *Kiss My Face Corp. v. Bunting*, No. 02 Civ. 2645 (RCC), 2003 U.S. Dist. LEXIS 17096, at *6 (S.D.N.Y. Sept. 30, 2003). Based on this absence of evidence, the court concluded that "Defendant has thus failed to satisfy her burden of demonstrating precisely which witnesses will be inconvenienced absent transfer." *Id.* The court then went on to note that the defendant "generally state[d] that her employees . . . would not be subject to process in New York," but failed to provide any affidavits from potential witnesses and otherwise "proffered no evidence that potential party or non-party witnesses would be unwilling to travel." *Id.* at *11-12. At no point did the court hold that affidavits from the individual witnesses were required. Similarly, in *NBA Properties*, the defendant failed to provide any information about its potential witnesses. 2000 U.S. Dist. LEXIS 3799, at *15. The court then went on to observe that the defendant further failed to provide any affidavits from any third-party witnesses about their unavailability, but, as in *Kiss My Face*, did not hold that such affidavits are required. *Id.* at *25.

Finally, ESPN specifically cites Mr. Milstein's conclusion that former ESPN employee Ian Votteri would likely not travel willingly to New York for trial as "speculation," and argues that Quiksilver should have secured a declaration from Mr. Votteri about his unwillingness to travel. Opp. at 10. Quiksilver is unclear how it could have definitively established Mr. Votteri's unwillingness, much less secured a declaration from him, when he refused to speak to Mr. Milstein. Mr. Milstein's sworn declaration regarding his conversations

with the third-party witnesses is ample evidence to substantiate their unwillingness or unavailability to travel to New York for trial.

     5.    <u>ESPN Fails to Address Other Potential Third-Party Witnesses</u>

ESPN's list of witnesses includes only those individuals on whose testimony ESPN intends to rely. This does not mean that there are no relevant or important ESPN or third-party witnesses in the Los Angeles area that have knowledge regarding ESPN's use of its X Games Marks. Indeed, given that the Summer X Games have been held in Los Angeles every year since 2003, and will be held in Los Angeles again this month, unquestionably there are witnesses local to Los Angeles with pertinent knowledge. While ESPN may not wish to call these individuals as witnesses, Quiksilver certainly might. Indeed, ESPN completely ignores the fact that Quiksilver has identified at least one such third party, ESPN's licensee American Sporting Goods, which is located in the Central District of California. *See* Barry Decl. Exh. F.

ESPN itself identified, in its Complaint, four additional potential witnesses (Messrs. Slater, Marzo, Wilson, and Rice). Complaint ¶ 22. These witnesses reside in Hawaii, Australia, and Wyoming, locations which are all closer to California than to New York. Milstein Decl. ¶ 8.

Finally, ESPN's argument that numerous witnesses could be in Aspen, China, Brazil, Dubai or Mexico, *in addition to* Los Angeles, supports Quiksilver's transfer request. Opp. at 11-12. Sales outside of the United States are irrelevant to a Lanham Act claim, and both the Los Angeles witnesses and the Aspen witnesses will find Los Angeles to be a more convenient forum than New York.

**B.**    **<u>The Appropriate Locus of Operative Facts Factor Also Favors Transfer</u>**

ESPN argues that the locus of operative facts in this case rests in New York because Quiksilver has sold some products there and some of ESPN's relevant employees are located there. This argument, however, is based on the erroneous assumption that this is a straightforward infringement case. But the fundamental issue to be resolved in this lawsuit is whether Quiksilver has priority for the X-related marks. Priority of use is a distinct issue from

likelihood of confusion, and is a condition precedent to any examination of confusion. *See ITC Ltd.*, 482 F.3d at 154. Thus, the more appropriate locus of operative events is where Quiksilver's marks were created and developed—the Central District of California.

In addition, ESPN's argument and cited case law imply that Quiksilver is challenging the propriety of New York as a venue. That is not the case. Quiksilver's motion is based on convenience, not propriety. While both parties sell some goods in New York, ESPN has already admitted, in its Complaint, that its X Games products are *primarily* sold at "hundreds of X Games events." Complaint ¶ 16. It makes sense to transfer this case to the Central District, where many of those "X Games events" have been and will be held, rather than keep it in a district that has no "X Games events" and has no particular connection to the national retailers that also may offer these products for sale. Accordingly, the more appropriate locus of events is the Central District of California.

C.      **Quiksilver Has Documents and Evidence That Will be Difficult to Transport**

ESPN attempts to quickly dispense with the location of documents factor, but completely ignores the fact that Quiksilver has extensive non-documentary evidence, including product samples and irreplaceable fabric swatches and original drawings, all of which would be difficult and worrisome to transport across the country. Milstein Decl. ¶ 9. Since ESPN did not provide any detail about its own documents and records, ESPN apparently will face no similar issues with transporting its evidence to California. Thus, this factor weighs in favor of transfer. *See NBA Props.*, 2000 U.S. Dist. LEXIS 3799 at *23 (factor favored party that detailed nature and volume of its documents and evidence that would be burdensome to transport).

D.      **ESPN's Choice of Forum Should Be Afforded Little Weight**

ESPN is headquartered in Connecticut, where presumably most of its employees reside (including, by ESPN's own admission, employees with relevant knowledge to this action). While ignoring its West Coast headquarters, and ignoring the fact that the X Games have never been in New York, ESPN points out that it has multiple offices in New York, and that many members of the X Games "team" work in New York. Opp. at 18.

As discussed above, this case will likely turn on Quiksilver's early use of the Gen X Brand. Accordingly, and because New York is no more ESPN's "home" than Los Angeles is, ESPN's choice of forum is not entitled to significant weight. *E.g., January Enters. v. Buena Vista TV*, 41 U.S.P.Q. 2d 1959, *3 (S.D.N.Y. 1997) ("plaintiff's choice is accorded less weight 'where the plaintiff's chosen forum is neither their home nor the place where the operative facts of the action occurred.'") (citation omitted).

### E. The Remaining Factors Are Neutral, Or Favor Transfer

The remaining factors are (1) relative means of the parties, (2) trial efficiency, (3) convenience of the parties, and (4) the forum's familiarity with the governing law. ESPN agrees that the factors of the parties' relative means and trial efficiency are neutral. Opp. at 17, 19.

With respect to party convenience, ESPN does not deny, or even mention, that it has a West Coast headquarters in the Central District of California. In contrast, Quiksilver has no similar New York headquarters. *See* Milstein Decl. ¶ 10. Thus, this factor favors transfer.

With respect to the forum's familiarity with the governing law, ESPN does not deny that the Central District of California can readily handle federal trademark claims. Instead, ESPN focuses on the corollary state law claims. To the extent the parties would maintain those claims in a California action (even though California has its own similar causes of action), ESPN provides no evidence that a California federal court could not adequately preside over New York state law claims. This factor is neutral.

### III. CONCLUSION

The critical factors of third-party witness convenience and the availability of process strongly favor transfer. The remaining factors are neutral, or also favor transfer. Thus, and for the foregoing reasons, this case should be transferred to the Central District of California.

Dated: Costa Mesa, California  
       July 8, 2008

LATHAM & WATKINS LLP

By:   /s/ Mark A. Finkelstein  
     Kenneth Conboy (KC 1154)  
     Jaron R. Shipp (JS 6365)  
     885 Third Avenue, Suite 1000

        New York, New York 10022
(212) 906-1200
kenneth.conboy@lw.com
jaron.shipp@lw.com

Mark A. Finkelstein (MF 1040)
650 Town Center Drive, Suite 2000
Costa Mesa, California 92626
(714) 540-1235
mark.finkelstein@lw.com
Admitted *pro hac vice*

Jennifer L. Barry (JB 0245)
600 West Broadway, Suite 1800
San Diego, California 92101
(619) 236-1234
jennifer.barry@lw.com
Admitted *pro hac vice*

Attorneys for Defendant
and Counterclaimant
Quiksilver, Inc.

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 8, 2008, I caused the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF System.

      I further certify that on this same date, I caused the attached document to be hand delivered as a Chambers Copy to:

Hon. Colleen McMahon
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St., Room 640
New York, NY 10007

           /s/ Mark A. Finkelstein
           Mark A. Finkelstein