UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESPN, INC.,<br><br>                    Plaintiff,<br><br>         - vs -<br><br>QUIKSILVER, INC.,<br><br>                    Defendant. | CIVIL NO.: 08 Civ. 4222 (CM) (MHD) |
| QUIKSILVER, INC.,<br><br>                    Counterclaimant,<br><br>         - vs -<br><br>ESPN, INC.,<br><br>                    Counterdefendant. | |

**PLAINTIFF-COUNTERDEFENDANT ESPN INC.'S MOTION TO DISMISS
DEFENDANT-COUNTERCLAIMANT QUIKSILVER, INC.'S SECOND, THIRD,
FOURTH, AND FIFTH COUNTERCLAIMS**

NIXON PEABODY LLP
Attorneys for Plaintiff-
Counterdefendant ESPN, Inc.
437 Madison Avenue
New York, New York 10022
(212) 940-3000

Frank W. Ryan
Tamar Y. Duvdevani
Eileen M. Cunningham

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

I.   BACKGROUND ............................................................................................................. 3

  A.   ESPN's Trademarks ................................................................................................ 3

  B.   Quiksilver's Infringing Activities ......................................................................... 4

  C.   Quiksilver's Counterclaims ................................................................................... 4

     1.   Specific Counterclaims ................................................................................... 6

ARGUMENT ........................................................................................................................ 8

II.  STANDARDS GOVERNING A 12(b)(6) MOTION TO DISMISS .................................... 8

III. QUIKSILVER HAS FAILED TO STATE A CLAIM UNDER THE LANHAM ACT
     OR ANY RELATED STATE LAW CLAIMS ...................................................................... 9

  A.   The Elements of a Trademark Infringement/Unfair Competition Claim ........................ 9

  B.   Quiksilver Has Failed To Plead That It Has A Valid And Protectible Trademark
       That It Has Used In Commerce ............................................................................... 12

  C.   Quiksilver Has Failed To Plead That ESPN Has Used Any of Quiksilver's Valid
       And Protectible Trademarks Or That There Is A Likelihood of Consumer Confusion
       Between Quiksilver's Marks and ESPN's Marks .......................................................... 13

IV.  Quiksilver Has Failed To State A Claim Under NY GBL § 360-l ...................................... 14

V.   Quiksilver Lacks Standing to Seek Cancellation of the X Games Federal Registration ........ 19

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400 (2d Cir. 2005) .......... 9, 10, 11, 13

*Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320 (S.D.N.Y. 2008) ................................... 19

*Am. Express Co. v. Goetz*, 515 F.3d 156 (2d Cir. 2008) ................................................. 12

*Am. Home Prod. Corp. v. Chattem, Inc.*, 84 Civ. 3671, 1986 U.S. Dist. LEXIS 25051 (S.D.N.Y. May 27, 1986)...............................................................................15, 16

*Arnold v. ABC, Inc.*, 06 Civ. 1747, 2007 U.S. Dist. LEXIS 5802 (S.D.N.Y. Jan. 29, 2007).........................................................................................................10, 14

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...................... 2, 8

*Berliner v. Recordcraft Sales Corp.*, 81 Civ. 4358, 1987 U.S. Dist. LEXIS 152 (S.D.N.Y. Jan. 15, 1987) ........................................................................................ 19

*BigStar Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185 (S.D.N.Y. 2000) .......... 17

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033 (2d Cir. 1992)............ 16

*C.V. Starr & Co. v. Am. Int'l Group*, 06 Civ. 2157, 2006 U.S. Dist. LEXIS 65605 (S.D.N.Y. Sept. 14, 2006) ........................................................................10, 11, 12

*Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474 (2d Cir. 1996)................................ 9

*Cartier, Inc. v. Deziner Wholesale, L.L.C.*, 55 U.S.P.Q. 2d 1131, 2000 U.S. Dist. LEXIS 4157 (S.D.N.Y. Apr. 3, 2000)................................................................17, 18

*Christopher D. Smithers Found., Inc. v. St. Lukes-Roosevelt Hosp. Ctr.,* 00 Civ. 5502, 2001 U.S. Dist. LEXIS 9293 (S.D.N.Y. July 5, 2001).................................... 18

*Chum Ltd. v. Lisowski*, 98 Civ. 5060, 2001 U.S. Dist. LEXIS 2462 (S.D.N.Y. Mar. 12, 2001) ...................................................................................................... 11

*Czech Beer Imps., Inc. v. C. Haven Imps., LLC*, 04 Civ 2270, 2005 U.S. Dist. LEXIS 12310 (S.D.N.Y. June 22, 2005)............................................................... 8, 13

*Deats v. Joseph Swantak, Inc.*, 619 F. Supp. 973 (N.D.N.Y. 1985)................................. 9

*Douglas v. Osteen*, 07-3925, 2008 U.S. Dist. LEXIS 40152 (E.D. Pa. May 16, 2008)....................................................................................................................... 12

*Galerie Gmurzynska v. Hutton*, 257 F. Supp. 2d 621 (S.D.N.Y. 2003) ............................ 8

*Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137 (2d Cir. 1997) ...................... 9

*Hormel Foods Corp. v. Jim Henson Prods.*, 73 F.3d 497 (2d Cir. 1996) ....................... 17

*In re Houbigant. Inc.*, 914 F. Supp. 997 (S.D.N.Y. 1996) ............................................... 20

*Jones Apparel Group, Inc. v. Piccone*, 94 Civ. 0754, 1994 U.S. Dist. LEXIS 7607
(S.D.N.Y. June 8, 1994) ...................................................................................... 11

*Kraft  Gen. Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123 (S.D.N.Y.
1993) .................................................................................................................... 17

*Le Book Publ'g, Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305
(S.D.N.Y. 2005) ................................................................................................... 11

*Malaco Leaf, AB v. Promotion In Motion, Inc.*, 287 F. Supp. 2d 355 (S.D.N.Y.
2003) .................................................................................................................... 17

*MasterCard Int'l Inc. v. Nader 2000 Primary Comm., Inc.*, 00 Civ. 6068, 2004
U.S. Dist. LEXIS 3644 (S.D.N.Y. Mar. 8, 2004) .............................................. 15, 16

*Mattel Inc. v. Jcom Inc.*, 48 U.S.P.Q. 2d 1467, 1998 U.S. Dist. LEXIS 16195
(S.D.N.Y. Sept. 10, 1998) .................................................................................. 17, 18

*Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1031
(2d Cir. 1989) ...................................................................................................... 16

*Moore Bus. Forms, Inc. v. Rite Aid Corp.*, 21 U.S.P.Q. 2d (BNA) 2024, 1991
U.S. Dist. LEXIS 18599 (W.D.N.Y. Dec. 6, 1991) ............................................ 16

*Nabisco, Inc. v. PF Brands, Inc.*, 50 F. Supp. 2d 188 (S.D.N.Y. 1999) .................... 17, 18

*NBA Props. v. Untertainment Records LLC*, 99 Civ. 2933, 1999 U.S. Dist. LEXIS
7780 (S.D.N.Y. May 26, 1999), ......................................................................... 17, 18

*Nikon, Inc. v. Ikon Corp.*, 803 F. Supp. 910 (S.D.N.Y. 1992) ..................................... 17

*Olay Co. v. Cococare Prod., Inc.*, 218 U.S.P.Q. (BNA) 1028, 1983 U.S. Dist.
LEXIS 17613 (S.D.N.Y. Apr. 19, 1983) ............................................................ 17

*Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56 (2d Cir. 2001) ................................................ 9

*Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194 (E.D.N.Y. 2007) ................ 13

*Perkins Sch. for the Blind v. Maxi-Aids, Inc.*, 274 F. Supp. 2d 319 (E.D.N.Y. 2003) ............................................................................................... 9, 12

*RBCI Holdings, Inc. v. Drinks Ams. Holdings, Ltd.*, 07 Civ. 2877, 2008 U.S. Dist. LEXIS 26122 (S.D.N.Y. Mar. 20, 2008) ........................................... 10, 13

*Rescuecom Corp. v. Google, Inc.*, 456 F. Supp. 2d 393 (N.D.N.Y. 2006) ..................... 11

*Resource Developers Inc. v. The Statue of Liberty-Ellis Island Found., Inc.*, 87 Civ. 1993, 1988 U.S. Dist. LEXIS 2501 (S.D.N.Y. Mar. 23, 1988) ........................... 8

*S. Cherry St. LLC v. Hennessee Group LLC (In re Bayou Hedge Fund Litig.)*, 534 F. Supp. 2d 405 (S.D.N.Y. 2007) .............................................................. 8

*SMJ Group, Inc. v. 417 Lafayette Rest. LLC*, 06 Civ. 1774, 2006 U.S. Dist. LEXIS 61645 (S.D.N.Y. Aug. 30, 2006) ................................................. 17

*Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621 (2d Cir. 1983) ................................. 16

*Solow v. BMW (US) Holding Corp.*, 97 Civ. 1373, 1998 U.S. Dist. LEXIS 16059 (S.D.N.Y. Oct. 13, 1998) .............................................................. 10, 11

*Swatch Group (U.S.) Inc. v. Movado Corp.*, 01 Civ. 0286, 2003 U.S. Dist. LEXIS 6015 (S.D.N.Y. April 9, 2003) ................................................................. 16

*Tri-Star Pictures, Inc. v. Leisure Time Prods. B.V.*, 17 F.3d 38 (2d Cir.), *cert. denied*, 513 U.S. 987, 130 L. Ed. 2d 396 (1994) ....................................... 11

*Ty Inc. v. Perryman*, 306 F.3d 509 (7th Cir. 2002) ...................................................17, 18

*U-Neek, Inc. v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 158 (S.D.N.Y. 2001) .............. 16

*Welch Allyn, Inc. v. Tyco Int'l Servs. AG*, 200 F. Supp. 2d 130 (N.D.N.Y. 2002) ........... 16

*Waddington N. Am. Bus. Trust v. EMI Plastics, Inc.*, 02 Civ. 3781, 2002 U.S. Dist. LEXIS 16634 (E.D.N.Y. Sept. 5, 2002) ....................................... 15

*Yurman Design, Inc. v. Chaindom Enters.*, 99 Civ. 9307, 2000 U.S. Dist. LEXIS 9243 (S.D.N.Y. July 5, 2000) .......................................................19, 20

## STATE CASES

*Allied Maint. Corp. v. Allied Mech. Trades, Inc.*, 42 N.Y.2d 538 (1977) ....................... 16

# FEDERAL STATUTES

15 U.S.C. § 1119.............................................................................................. 19

15 U.S.C. § 1127.......................................................................................... 9, 16

15 U.S.C. § 1125(c) ........................................................................................ 15

# STATE STATUTES

1996 N.Y. Adv. Legis. Serv. 319 (LexisNexis) ............................................. 15

N.Y. Gen. Bus. Law § 360-l (McKinney 2007) ............................................. 15

# MISCELLANEOUS

4 *McCarthy on Trademarks and Unfair Competition* § 23:1 (4th ed. 2008)................14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESPN, INC.,

                              Plaintiff,

            - vs -                              CIVIL NO.: 08 Civ. 4222 (CM) (MHD)

QUIKSILVER, INC.,

                              Defendant.

QUIKSILVER, INC.,

                              Counterclaimant,

            - vs -

ESPN, INC.,

                              Counterdefendant.

**PLAINTIFF-COUNTERDEFENDANT ESPN INC.'S MOTION TO DISMISS
DEFENDANT-COUNTERCLAIMANT QUIKSILVER, INC.'S SECOND, THIRD,
FOURTH, AND FIFTH COUNTERCLAIMS**

Plaintiff and Counterdefendant ESPN, Inc. ("ESPN") respectfully submits this

Memorandum of Law in Support of its Motion to Dismiss Defendant and Counterclaimant

Quiksilver, Inc.'s ("Quiksilver") Second, Third, Fourth, and Fifth Counterclaims Pursuant to

Fed. R. Civ. P. 12(b)(6).

**PRELIMINARY STATEMENT**

In this action, ESPN asserts that Quiksilver has infringed and is infringing ESPN's

trademark rights.  Quiksilver responds with an assortment of federal and state trademark

infringement counterclaims, all of which are comprised of allegations of prior use of a "Gen X Brand." It is apparent from Quiksilver's pleadings that Quiksilver searched through its inventory of past designs and identified any with a form of an "X", crafting a theory of prior use based on the results of that search. The result of that exercise is the purported "Gen X Brand," which appears to be little more than a handful of dissimilar designs which may have been used in some fashion by Quiksilver at various points in time. Unfortunately for Quiksilver, even if that "brand" were not an artifice, the "Gen X Brand" is simply not a trademark by any valid definition of the term. Accordingly, Quiksilver has no trademark rights, despite its conclusory statement to the contrary.

Nowhere in Quiksilver's pleading does it allege, either outright or by implication, the necessary elements of a trademark or an unfair competition claim under the Lanham Act or New York common law. Quiksilver does not allege: (1) that it owns a valid and protectible trademark; (2) any use of that mark; (3) that ESPN has used that mark; and (4) a likelihood of confusion between its mark and one being used by ESPN. Quiksilver also does not allege, because it cannot allege, that the mark forming the basis of its counterclaims (whatever that mark may be) is famous, extremely strong, or even distinctive, a threshold requirement for a claim of trademark dilution under New York General Business Law. Finally, Quiksilver lacks standing to assert its claim for cancellation of ESPN's incontestable trademarks and trademark applications for the X Games trademarks because it has not (and cannot) allege the type of damage required under the Lanham Act to assert such a claim.

As stated by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a pleading must set forth "enough facts to state a claim to relief that is plausible on its face." Because

2

Quiksilver's pleading does not present a factual predicate for a plausible claim of trademark infringement, unfair competition, or dilution, Quiksilver's counterclaims fail to meet the threshold requirement of *Bell Atlantic*, and accordingly should be dismissed.

## I.     BACKGROUND

### A.     ESPN's Trademarks

ESPN is a well known multimedia sports entertainment company.  (Compl. ¶ 2.)  Its wide-ranging media platforms include television, print, broadband, and wireless.  (Compl. ¶ 2.)  Over the past several years, ESPN created a number of sporting events and competitions that can be accessed via these various platforms.  (Compl. ¶ 2.)  Among the most famous are the ESPN X Games. (Compl. ¶ 2.)

The ESPN X Games premiered in 1996 before approximately 200,000 spectators, broadcast live on ESPN Sportzone (now known as ESPN.com).  (Compl. ¶ 3.)  In the years since, the X Games have grown into an immensely popular alternative sports competition, with competitions and qualifying events both in the U.S. and internationally.  (Compl. ¶ 4.)

ESPN has used the X GAMES word mark since at least 1996 and it owns four federal trademark registrations relating to that mark.  (Compl. ¶ 12.)  ESPN also owns pending applications for federal trademark registration of two stylized marks, used continuously since at least 2005 at the X Games events themselves as well as on apparel and other merchandise:

  

B.    Quiksilver's Infringing Activities

Quiksilver is a large manufacturer of surfwear and other boardsport-related equipment.

(Compl. ¶ 7.)  Quiksilver is currently using a mark on goods it sells that ESPN contends is

confusingly similar to the ESPN X Games trademarks:

 

(Compl. ¶ 18.)  According to information available to ESPN, Quiksilver began using this mark in

2007 and now uses it extensively in connection with its apparel and accessories lines.  (*See*

Compl. ¶¶ 18-19.)  As a consequence, ESPN commenced this action in May 2008, asserting

claims for trademark infringement and unfair competition under the Lanham Act, as well as

various state law claims.  (*See* Compl. ¶¶ 25, 31, 36, 39.)

C.    Quiksilver's Counterclaims

Quiksilver asserts Five Counterclaims against ESPN, all of which are premised upon

what Quiksilver has termed its "Gen X Brand."  (*See* Counterclaim at ¶¶ 42-64.)  The first

mention of the "Gen X Brand" appears in Paragraph 15 of the Counterclaim, which alleges the

following:

> 15.    Since no later than 1986, Quiksilver began incorporating an 'X' symbol
> into its boardshorts and other clothing designs and marketing materials.
> Subsequently, and by no later than 1989, Quiksilver developed the Generation X
> brand, which was created to symbolize a new generation of surfers and
> boardriders, and utilized the 'X' as the consistent centerpiece of the brand image.
> The X symbol, which has been incorporated into many different designs,
> constitutes a trademark of Quiksilver.  The designs are collectively referred to as
> the 'Gen X Brand.'

(Counterclaim ¶ 15) (internal pictures omitted).  Quiksilver further alleges that the "Gen X Brand" has included "variations of different designs," all of which feature "the letter X." (Counterclaim ¶ 16.)  In Paragraphs 16 through 26, Quiksilver inserts into its Counterclaim "example[s]" of "designs" it alleges to have used in connection with "a variety of products and marketing materials."  (Counterclaim ¶ 16.)  All of these "examples" incorporate to a greater or lesser extent various stylized X images.  (*See* Counterclaim ¶¶ 16-26.)  Visual inspection reveals that Quiksilver's grouping of the images under the moniker "Gen X Brand" is an artifice.  The "designs" are not uniform by any means – some include human or animal figures; some include the word "Quiksilver"; others include different words, such as "Extreme", "Factor," "Quix," or "America's Future"; some include an element in the shape of a Greek cross turned 45°; another includes an element in the shape of an Iron Cross; one has the number "70" as an element; another has the number "1" as an element; and so on.  *Id*.

Independent of its failure to identify in any decipherable way the so called "Gen X Mark", Quiksilver presents the images without context, failing to show how any of the cited "designs" were actually used on clothing or other items.  A number of the "designs" appear to be nothing more than fabric swatches:

  

(*See, e.g.,* Counterclaim ¶ 15.)  While the pleading first states, in conclusory fashion, that "[t]he X symbol, which has been incorporated into many different designs, constitutes a trademark of Quiksilver" (Counterclaim ¶ 15), it later states that "Quiksilver's use of Xs on its product as complementary ornamentation to the Gen X Brand is non-trademark use." (Counterclaim ¶ 44.)

Further, the pleading says nothing about the scope of any alleged use. In several instances, the pleading states that a particular "design" was "used on" various items of clothing or apparel, without alleging that those particular items were ever even offered for sale, much less offered for sale or sold in any material quantities. (*See, e.g.,* Counterclaim ¶ 21) (simply stating that "[t]hese designs were used on t-shirts, stickers, and other items"). While the pleading asserts that Quiksilver has "common-law trademark rights" in these various "designs," it fails to allege commercial use – much less sustained and substantial commercial use – in any particular locale or channel of trade. (*See generally* Counterclaims.)

Quiksilver also alleges in its Counterclaims information about "Third Party 'X' Trademarks." (Counterclaim ¶¶ 36-38.) It alleges that "Quiksilver and ESPN are not the only companies in the apparel market to use X-related marks on their goods. Numerous third party companies feature 'X' marks on goods such as clothing, footwear, and even lingerie." (Counterclaim ¶ 36.) According to Quiksilver, the "amount of third party use increases even more in markets beyond apparel." (Counterclaim ¶ 38.)

1.    Specific Counterclaims

Quiksilver alleges five Counterclaims against ESPN. The First Counterclaim is for Declaratory Relief, and Quiksilver asks the Court to declare in part that: (1) Quiksilver's use of Xs on its products as "complementary ornamentation" to the Gen X Brand is "non-trademark" use; (2) Quiksilver's use of the Gen X Brand does not infringe or dilute ESPN's X Games Marks because Quiksilver has priority of use and/or its use of Xs is an ornamental, non-trademark use; (3) Quiksilver's use of the Gen X Brand does not constitute unfair competition vis-à-vis ESPN's X Games Marks because Quiksilver has priority of use and/or its use of Xs is ornamental, non-trademark use; and (4) Quiksilver's use of the Gen X Brand does not dilute

ESPN's X Games Marks because the X Games Marks are already diluted by the voluminous third party use of X-related marks.  (Counterclaim ¶ 44.)

Quiksilver's Second Counterclaim is for a violation of 15 U.S.C. § 1125(a), and alleges that Quiksilver: (1) has "consistently used the Gen X Brand on its products"; (2) has established "significant common-law trademark rights in connection with its Gen X Brand"; and (3) that ESPN, through its use of the X Games Marks, is infringing the "Gen X Brand."  (Counterclaim ¶¶ 46-53.)

Quiksilver's Third Counterclaim alleges Trademark Dilution under NY GBL § 360-l due to ESPN's purported dilution of Quiksilver's "Gen X Brand" by virtue of the X Games Marks. (Counterclaim ¶¶ 54-56.)

Quiksilver's Fourth Counterclaim is for New York Common Law Unfair Competition and alleges that ESPN's "misappropriation of Quiksilver's Gen X Brand, in particular, its copying of the 'Quiksilver X' design, violates New York common law."  (Counterclaim ¶¶ 57-59.)

Finally, Quiksilver's Fifth Counterclaim seeks cancellation of the X Games trademark registrations based upon fraud and ESPN's failure to inform the USPTO of Quiksilver's purported senior rights in the "Gen X Brand."  (Counterclaim ¶¶ 60-64.).

Nowhere in Quiksilver's Counterclaims is it alleged that it owns a trademark that it uses in commerce as an indication of source or origin; that such trademark is being infringed by ESPN; or that a likelihood of confusion exists between any of Quiksilver's designs and any marks used by ESPN.  (*See generally* Counterclaims.)  As set forth below, Quiksilver's Counterclaims fail to state a claim upon which relief can be granted, and must be dismissed.

## ARGUMENT

## II.    STANDARDS GOVERNING A 12(B)(6) MOTION TO DISMISS

"Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted." *S. Cherry St. LLC v. Hennessee Group LLC (In re Bayou Hedge Fund Litig.)*, 534 F. Supp. 2d 405, 413 (S.D.N.Y. 2007) (McMahon, J.). In ruling on a 12(b)(6) motion to dismiss, the court is required to accept the material facts alleged in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See id*. At the same time, "'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *See id*. (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929, 934 (2007)). "Indeed, a plaintiff must assert 'enough facts to state a claim to relief that is plausible on its face.'" *See id*. If a party has not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp.*, 127 S. Ct. at 1974, 67 L. Ed. 2d at 949.

On an even more fundamental level, where a party fails to plead the elements of its cause of action, the cause of action must be dismissed. *See, e.g., Czech Beer Imps., Inc. v. C. Haven Imps., LLC*, 04 Civ. 2270, 2005 U.S. Dist. LEXIS 12310, at *22-23 (S.D.N.Y. June 22, 2005) ("Because Plaintiff fails to plead the elements required to allege a claim for unfair competition, Defendant's motion to dismiss is GRANTED as to Claim Three of Plaintiff's complaint."); *Galerie Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 630 n. 11 (S.D.N.Y. 2003) (motion to dismiss granted where plaintiff "fail[ed] to allege a fundamental element of a Lanham Act claim"); *Resource Developers Inc. v. The Statue of Liberty-Ellis Island Found., Inc.*, 87 Civ. 1993, 1988 U.S. Dist. LEXIS 2501, at *5 (S.D.N.Y. Mar. 23, 1988) (motion to dismiss claim granted where claim "fail[ed] to allege essential elements of Lanham Act claims for trademark

infringement and/or for false designation of origin."); *Deats v. Joseph Swantak, Inc.*, 619 F.

Supp. 973, 978 (N.D.N.Y. 1985) (trademark infringement claim dismissed where plaintiff failed

to plead use "in commerce"; "[w]ere the court to read into [the] complaint facts not pleaded and

demand that plaintiff be held to those facts, the venerated rule declaring the plaintiff to be the

master of the complaint would cease to have any meaning.").

Such is the case here.

## III.    QUIKSILVER HAS FAILED TO STATE A CLAIM UNDER THE LANHAM ACT OR ANY RELATED STATE LAW CLAIMS

### A.    The Elements of a Trademark Infringement/Unfair Competition Claim

A trademark is "'any word, name, symbol, or device, or any combination thereof' used

by a person 'to identify and distinguish his or her goods, including a unique product, from those

manufactured or sold by others and to indicate the source of the goods, even if that source is

unknown.'" *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997)

(quoting 15 U.S.C. § 1127); *Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 61 (2d Cir. 2001) (same).

Pursuant to the Lanham Act, a trademark is "used" on goods when the mark "is placed in any

manner on the goods or their containers or the displays associated therewith or on the tags or

labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on

documents associated with the goods or their sale," and is used "in commerce" when "the goods

are sold or transported in commerce." 15 U.S.C. § 1127. *See also, e.g., 1-800 Contacts, Inc. v.

WhenU.com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005) (quoting same).

"To state a claim for trademark infringement under the Lanham Act, a plaintiff must

allege that 'it has a valid mark entitled to protection and that the defendant's use of it is likely to

cause confusion.'" *Perkins Sch. for the Blind v. Maxi-Aids, Inc.*, 274 F. Supp. 2d 319, 323

(E.D.N.Y. 2003) (quoting *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 477 (2d Cir.

1996)) (emphasis added); *see also RBCI Holdings, Inc. v. Drinks Ams. Holdings, Ltd.,* 07 Civ. 2877, 2008 U.S. Dist. LEXIS 26122, at *16-17 (S.D.N.Y. Mar. 20, 2008) ("To state a trademark infringement claim under § 43(a), RBCI must allege that Drinks's use of the Mark 1) involves goods or services, 2) has an effect on interstate commerce, and 3) includes a false designation of origin or a false description of the goods or services likely to cause consumer confusion."); *Arnold v. ABC, Inc.,* 06 Civ. 1747, 2007 U.S. Dist. LEXIS 5802, at *6 (S.D.N.Y. Jan. 29, 2007) ("To state a claim for trademark infringement under sections 32(1)(a) and 43(a) of the Lanham Act, plaintiff must allege facts which establish that her mark merits protection and that Defendants' use of her mark is likely to cause consumer confusion as to the mark's source."); *C.V. Starr & Co. v. Am. Int'l Group*, 06 Civ. 2157, 2006 U.S. Dist. LEXIS 65605, at *10 (S.D.N.Y. Sept. 14, 2006) ("To plead trademark infringement under the Lanham Act, AIG must show that it is the owner of a valid mark that is entitled to protection and that CV Starr's actions are likely to cause consumer confusion."); *Solow v. BMW (US) Holding Corp*., 97 Civ. 1373, 1998 U.S. Dist. LEXIS 16059, at *5-6 (S.D.N.Y. Oct. 13, 1998) ("The essential elements of a claim for trademark infringement under state or federal law are: (1) unauthorized use by defendant of a mark or colorable imitation of a mark; (2) in connection with the sale, distribution, offering for sale, or advertising of any goods or services; (3) where such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services.").

Accordingly, to state a claim for trademark infringement, a claimant must allege that it actually has a valid "trademark" as it is defined in the Lanham Act.  If a valid trademark is alleged, three "distinct" elements of a trademark infringement claim are "use," "in commerce," and "likelihood of confusion."  *1-800 Contacts, Inc.*, 414 F.3d at 407.  Like the existence of a

valid trademark, "use must be decided as a threshold matter because . . . no such activity is actionable under the Lanham Act absent the 'use' of a trademark."  *Id*; *see also, e.g., Rescuecom Corp. v. Google, Inc.*, 456 F. Supp. 2d 393, 398 (N.D.N.Y. 2006) ("To prevail on a trademark infringement claim under [Sections 32(1) and/or § 43(a)] of the Lanham Act . . . a plaintiff must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale . . . or advertising of goods or services, (5) without the plaintiff's consent. . . . The plaintiff must also show that the defendant's use of that mark is likely to cause confusion. . .") (internal citations and quotation marks omitted); *cf., Le Book Publ'g, Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 312 (S.D.N.Y. 2005) (test for false designation same as that for trademark infringement).

   To state a claim for New York common law trademark infringement or unfair competition, the same requirements apply:  the party making the claim must demonstrate that (1) it "possesses a valid, protectable mark,"  *Chum Ltd. v. Lisowski*, 98 Civ. 5060, 2001 U.S. Dist. LEXIS 2462, at *19, n.5 (S.D.N.Y. Mar. 12, 2001) (citing *Tri-Star Pictures, Inc. v. Leisure Time Prods. B.V.*, 17 F.3d 38, 43 (2d Cir.), *cert. denied,* 513 U.S. 987, 130 L. Ed. 2d 396 (1994)), and (2) that the result of the alleged use by the defendant "is a likelihood of confusion between the marks of the alleged infringer and the charging party."  *Jones Apparel Group, Inc. v. Piccone,* 94 Civ. 0754, 1994 U.S. Dist. LEXIS 7607, at *8 (S.D.N.Y. June 8, 1994).  *See also C.V. Starr & Co.*, 2006 U.S. Dist. LEXIS 65605, at *10 ("standards for trademark infringement under New York common law substantively identical to Lanham Act"); *Solow*, 1998 U.S. Dist. LEXIS 16059, at *6 ("As to unfair competition, the essence of such a cause of action is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to

deceive purchasers as to the origin of the goods.") (internal quotation marks omitted); *C.V. Starr & Co.*, 2006 U.S. Dist. LEXIS 65605, at *10 (same).

      B.    <u>Quiksilver Has Failed To Plead That It Has A Valid And Protectible Trademark That It Has Used In Commerce</u>

A claim of trademark infringement requires, as a fundamental element, identification of the valid mark allegedly used by the claimant. *See Perkins Sch. for the Blind*, 274 F. Supp. 2d at 323; *see also* Point A above. Quiksilver's pleading fails to meet this threshold requirement. The pleading simply shows images of a disparate group of "designs" and arbitrarily calls them the "Gen X Brand." No trademark, as the term is defined by the applicable law, appears anywhere in the counterclaims, and Quiksilver's pleading fails to state facts which, if true, would establish that the alleged "Gen X Brand" or any of the designs that allegedly comprise it are used as source identifiers. *See Am. Express Co. v. Goetz*, 515 F.3d 156, 159 (2d Cir. 2008) ("A mark that does not perform the role of identifying a source is not a trademark."). Notably, even after stating in conclusory fashion that "[t]he X symbol . . . constitutes a trademark of Quiksilver" (Counterclaim ¶ 15), and that one of its designs, which it has called the "Quiksilver X design," is a trademark (Counterclaim ¶ 41), Quiksilver itself affirmatively *disavows* trademark use of such symbol and that design: "Quiksilver's use of Xs on its product as complementary ornamentation to the Gen X Brand is non-trademark use." (Counterclaim ¶ 44.) Furthermore, while Quiksilver alleges that some designs containing Xs were put on its products and marketing materials, and while Quiksilver states in conclusory fashion in its Second Counterclaim that the "Gen X Brand" has been "used" on its products, the pleading fails to allege any use on goods as a signifier of origin. *See, e.g., Douglas v. Osteen*, 07-3925, 2008 U.S. Dist. LEXIS 40152, at *16-17 (E.D. Pa. May 16, 2008) ("Because Plaintiff does not allege (and cannot prove) that the phrase 'eyes of faith' distinguishes his book from the products of others, Plaintiff has failed to state a claim for

trademark infringement under § 1125(a)").  Because Quiksilver fails to allege the existence of a

valid and protectible mark used in commerce by Quiksilver, even when viewing its

counterclaims in a light most favorable to it, the counterclaims fail to state a claim of trademark

infringement or unfair competition.

       C.    <u>Quiksilver Has Failed To Plead That ESPN Has Used Any of Quiksilver's Valid And Protectible Trademarks Or That There Is A Likelihood of Consumer Confusion Between Quiksilver's Marks and ESPN's Marks</u>

      Quiksilver's failure to plead that it owns a valid and protectible mark is sufficient

grounds to dismiss all of Quiksilver's counterclaims.  *See, e.g., Czech Beer Imps., Inc.*, 2005

U.S. Dist. LEXIS 12310, at *22-23; *see also* Point B above.  Its additional failure to allege that

ESPN used any of its marks, or that a likelihood of confusion exists between Quiksilver's and

ESPN's marks, proves beyond a doubt that Quiksilver's counterclaims are insufficient. This is

because use of another's mark and/or a likelihood of confusion between the claimant's mark and

the one used by the alleged infringer are essential elements of a trademark infringement or unfair

competition claim.  *See 1-800 Contacts, Inc.*, 414 F.3d at 407; *RBCI Holdings, Inc.,* 2008 U.S.

Dist. LEXIS 26122, at *16-17.  Quiksilver alleges neither.

      Rather, Quiksilver merely states that its use of the "Gen X Brand" predates ESPN's use

of its X Games trademarks:

> ESPN has asserted that the parties' marks cannot co-exist.  Thus, ESPN, through
> its use of the junior X Games Marks, has been and is engaged in trademark
> infringement and unfair competition. . .

(Counterclaim ¶ 49.)  Assuming *arguendo* that (1) the Gen X Brand is a trademark (which it is

not), and (2) that ESPN has asserted infringement of its X Games marks by the "Gen X Brand"

(which it has not), an allegation of prior use, without an allegation of use of an infringing mark

by the alleged infringer or a likelihood of confusion, does not state a claim for trademark

infringement.  *Compare Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 217 (E.D.N.Y.

2007) (prior use is a defense to trademark infringement where claimed senior user demonstrates "(1) present rights in the mark, (2) acquired prior to the date of registration, (3) continual use of the mark since that date, and (4) use prior to the registrant on the goods or services that are in issue.") *with Arnold,* 2007 U.S. Dist. LEXIS 5802, at *6 ("To state a claim for trademark infringement under sections 32(1)(a) and 43(a) of the Lanham Act, plaintiff must allege facts which establish that her mark merits protection and that Defendants' use of her mark is likely to cause consumer confusion as to the mark's source."); *see also* 4 *McCarthy on Trademarks and Unfair Competition* § 23:1 (4th ed. 2008) ("While issues of priority, secondary meaning, assignment, and the like, may be present in some cases, the test of likelihood of confusion is the touchstone of trademark infringement as well as unfair competition."). Accordingly, Quiksilver has failed to plead this essential element of a trademark and unfair competition claim.

Because Quiksilver has failed to plead that it has a valid trademark that is confusingly similar to a mark used by ESPN, its counterclaims must be dismissed. At best, Quiksilver has identified a series of disparate designs, not a trademark or a series of trademarks. These designs are alleged by Quiksilver to be ornamental non-trademarks. None of these designs are alleged to have been used continuously. None of these designs have been alleged to be confusingly similar to a mark used by ESPN.

In sum, because Quiksilver has failed to plead the elements of a trademark infringement or unfair competition claim, its Second, Third, and Fourth Counterclaims must be dismissed.

## IV.    QUIKSILVER HAS FAILED TO STATE A CLAIM UNDER NY GBL § 360-l

Quiksilver's Third Counterclaim alleges trademark dilution in violation of the New York General Business Law § 360-l, New York's Anti-Dilution statute. (Counterclaim ¶¶ 37-40.) This claim fails for the same reasons as the other trademark claims, discussed above, and for the

additional reason that Quiksilver has failed to allege in any way that any of its marks/designs are distinctive, famous, or extremely strong.

Both the Federal Trademark Dilution Act ("FDTA"), 15 U.S.C. § 1125(c), and the New York Anti-Dilution statute guard against the unauthorized use of marks that harm the goodwill and value of a plaintiff's mark. *See, e.g., MasterCard Int'l Inc. v. Nader 2000 Primary Comm., Inc.*, 00 Civ. 6068, 2004 U.S. Dist. LEXIS 3644, at *18 (S.D.N.Y. Mar. 8, 2004).

The New York General Business Law § 360-l states:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

N.Y. Gen. Bus. Law § 360-l (McKinney 2007).

Like the FDTA, "[t]he New York Anti-Dilution statute . . . was passed to protect <u>famous</u> trademarks from use by others on non-competing goods: honing in on the dilution rather than the confusion caused by such use." *Am. Home Prod. Corp. v. Chattem, Inc.*, 84 Civ. 3671, 1986 U.S. Dist. LEXIS 25051, at *17 (S.D.N.Y. May 27, 1986) (emphasis added). The legislative history of the New York General Business Law § 360-l confirms the laws' parallel purposes, stating that "[Section 360-l's purpose] is to provide a system of state trademark registration and protection substantially consistent with the federal system of trademark registration and protection under the Trademark Act of 1946, as amended." 1996 N.Y. Adv. Legis. Serv. 319 (LexisNexis). Section 360-l's legislative history also provides that "the construction given the federal act should be examined as persuasive authority for interpreting and construing this act." *Id.*; *see also, e.g., Waddington N. Am. Bus. Trust v. EMI Plastics, Inc.*, 02 Civ. 3781, 2002 U.S. Dist. LEXIS 16634, at *28 (E.D.N.Y. Sept. 5, 2002) ("[t]he elements for the New York anti-

15

dilution statute are identical [with the FDTA].") (citing *U-Neek, Inc. v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 158, 175 (S.D.N.Y. 2001)); *Moore Bus. Forms, Inc. v. Rite Aid Corp.*, 21 U.S.P.Q.2D (BNA) 2024, 1991 U.S. Dist. LEXIS 18599, at *25 (W.D.N.Y. Dec. 6, 1991) (stating that the Second Circuit has indicated "that the state's antidilution statute would protect only extremely strong marks and also has noted that some commentators believe that only 'famous' or 'celebrated' marks should be protected by anti-dilution statutes.") (citing *Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 625 (2d Cir. 1983)).

"Dilution" is defined as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127; *see also MasterCard Int'l Corp.*, 2004 U.S. Dist. LEXIS 3644 at *18. *Accord, Am. Home Prod. Corp.*, 1986 U.S. Dist. LEXIS 25051, at *17 ("Examples of trademarks found to dilute famous trademarks include: Buick aspirin tablets, Kodak pianos, and Bulova gowns.") (citing *Sally Gee, Inc.*, 699 F.2d at 625).

Accordingly, to warrant protection under § 360-l, a plaintiff's mark must be distinctive, famous, or extremely strong. *See, e.g., Sally Gee, Inc.*, 699 F.2d at 625 (noting the New York anti-dilution statute protects only extremely strong marks.) (citing *Allied Maint. Corp. v. Allied Mech. Trades, Inc.*, 42 N.Y.2d 538, 545-46 (1977)); *Welch Allyn, Inc. v. Tyco Int'l Servs. AG*, 200 F. Supp. 2d 130, 150 (N.D.N.Y. 2002) (for a valid dilution claim, "the Second Circuit has found that there must be 'some mental association between' the parties' marks [which] may be created where the plaintiff's mark is very famous . . . .") (quoting *Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1031 (2d Cir. 1989)); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1049 (2d Cir. 1992); *Swatch Group (U.S.) Inc. v. Movado*

*Corp.*, 01 Civ. 0286, 2003 U.S. Dist. LEXIS 6015, at *18 (S.D.N.Y. April 9, 2003); *Malaco*

*Leaf, AB v. Promotion In Motion, Inc.*, 287 F. Supp. 2d 355, 367 (S.D.N.Y. 2003); *BigStar*

*Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 218 (S.D.N.Y. 2000); *Nabisco, Inc. v.*

*PF Brands, Inc.*, 50 F. Supp. 2d 188, 205 (S.D.N.Y. 1999) ("The 'distinctiveness' of the mark, as

the term is used in this context, is essentially synonymous for fame and not a term of art."); *Kraft*

*Gen. Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123, 134 (S.D.N.Y. 1993); *Olay Co. v.*

*Cococare Prod., Inc.*, 218 U.S.P.Q. (BNA) 1028, 1983 U.S. Dist. LEXIS 17613, at *57

(S.D.N.Y. Apr. 19, 1983) (all stating that the Anti-Dilution statute protects only famous or

extremely strong marks). Thus, to successfully allege a claim for dilution, a plaintiff must at the

very least plead that its mark is distinctive, if not famous or extremely strong. *Id.*; *see also, e.g.,*

*SMJ Group, Inc. v. 417 Lafayette Rest. LLC*, 06 Civ. 1774, 2006 U.S. Dist. LEXIS 61645, at *9-

11 (S.D.N.Y. Aug. 30, 2006). Examples of famous or extremely strong marks include: Barbie

(*Mattel Inc. v. Jcom Inc.*, 48 U.S.P.Q.2d 1467, 1470, 1998 U.S. Dist. LEXIS 16195, at *9

(S.D.N.Y. Sept. 10, 1998)), Beanie Babies (*Ty Inc. v. Perryman*, 306 F.3d 509, 511 (7th Cir.

2002)), Cartier (*Cartier, Inc. v. Deziner Wholesale, L.L.C.*, 55 U.S.P.Q.2d 1131, 1136, 2000 U.S.

Dist. LEXIS 4157, at *19 (S.D.N.Y. Apr. 3, 2000)), National Basketball Association (*NBA Prop.*

*v. Untertainment Records LLC*, 99 Civ. 2933, 1999 U.S. Dist. LEXIS 7780, at *8 (S.D.N.Y. May

26, 1999)), Nikon (*Nikon, Inc. v. Ikon Corp.*, 803 F. Supp. 910, 914 (S.D.N.Y. 1992)); and

SPAM (*Hormel Foods Corp. v. Jim Henson Prods.*, 73 F.3d 497, 506 (2d Cir. 1996) ("It is

beyond dispute that SPAM is an extremely strong mark.")).

  Quiksilver has not pled, because it cannot, that its alleged "Gen X Brand" (or any of the

designs that allegedly comprise it) is famous, distinctive, or extremely strong. (*See generally*

Counterclaims.) Quiksilver's 360-l claim should thus be dismissed. *See, e.g., SMJ Group, Inc.*,

2006 U.S. Dist. LEXIS 61645, at *9 ("Plaintiffs have failed to sufficiently allege their dilution

claims under either the federal or state causes of action, because plaintiffs have failed to allege

that their marks are sufficiently famous or distinctive to warrant protection against dilution."); *cf.*

*Christopher D. Smithers Found., Inc. v. St. Lukes-Roosevelt Hosp. Ctr.,* 00 Civ. 5502, 2001 U.S.

Dist. LEXIS 9293, at *16 (S.D.N.Y. July 5, 2001) (holding that because plaintiffs did not plead

that they own a famous mark as required by 15 U.S.C. § 1125(c)(1), they could not establish a

prima facie case of dilution or tarnishment under the Lanham Act and defendants' motion to

dismiss that claim was granted).  Moreover, any attempt to amend the Counterclaim in this

regard would prove futile because, as a matter of law, Quiksilver's purported "Gen X Brand" is

not famous or extremely strong.  *Compare, e.g., Mattel Inc.*, 48 U.S.P.Q.2d at 1470; *Ty Inc.*, 306

F.3d at 511; *Cartier, Inc.*, 55 U.S.P.Q.2d at 1136; *Nabisco, Inc.*, 50 F. Supp. 2d at 205; *NBA

Props.,* 1999 U.S. Dist. LEXIS 7780, at *8.  This is particularly apparent due to Quiksilver's

assertions that (1) the "Gen X Brand" is comprised of many different designs, negating

distinctiveness; and (2) that there are many third party uses of "X".[1]  (Counterclaims ¶¶ 15-26.)

    For the foregoing reasons, Quiksilver's Third Counterclaim fails to allege a cause of

action for which relief can be granted, and must be dismissed.

---

[1]    Unlike ESPN, whose dilution allegations are based upon Quiksilver's use of a logo
confusingly similar to ESPN's two distinctive stylized marks depicted in Paragraph 13 and
Exhibit A of the Complaint, Quiksilver appears to assert that it owns the rights to all Xs
everywhere.  *See* Counterclaim ¶ 15 ("The X symbol, which has been incorporated into
many different designs, constitutes a trademark of Quiksilver.").  Because Quiksilver also
pleads that there are many third party uses of "X", but does not assert rights over a particular
stylized or distinctive X, its dilution claim is belied by its own pleading.

## V.    QUIKSILVER LACKS STANDING TO SEEK CANCELLATION OF THE X GAMES FEDERAL REGISTRATION

"A plaintiff seeking cancellation of a federal trademark registration under 15 U.S.C. § 1119 must satisfy the standing requirements set forth in 15 U.S.C. § 1064." *Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 333 n.16 (S.D.N.Y. 2008). 15 U.S.C. § 1119 states in relevant part:

> A petition to cancel a registration of a mark, stating the grounds relied upon, may, upon payment of the prescribed fee, be filed as follows by any person who believes that he is or will be damaged, including as a result of a likelihood of dilution by blurring or dilution by tarnishment under section 43(c) . . . by the registration of a mark . . .

Here, Quiksilver asserts that it is being damaged "because [ESPN's] registrations are either being asserted against Quiksilver in litigation or may be asserted against Quiksilver in future lawsuits or opposition/cancellation proceedings." (Counterclaim ¶ 64.) This is insufficient. To be "damaged" within the meaning of 15 U.S.C. § 1119, the complainant must assert "an actual commercial or pecuniary interest in his own mark.'" *Yurman Design, Inc. v. Chaindom Enters*., 99 Civ. 9307, 2000 U.S. Dist. LEXIS 9243, at *12-13 (S.D.N.Y. July 5, 2000) (quoting *Berliner v. Recordcraft Sales Corp*., 81 Civ. 4358, 1987 U.S. Dist. LEXIS 152, at *22 (S.D.N.Y. Jan. 15, 1987)). "That belief [of damage by a registration] cannot be subjective, illusory, or founded in some notion of bruised *amour propre*." *Berliner*, 1987 U.S. Dist. LEXIS 152, at *22. In *Yurman*, the defendant, like Quiksilver here, asserted a counterclaim under 15 U.S.C. § 1119 seeking to cancel plaintiff's federal trademark registration, and alleged, *inter alia*, that plaintiff was not the owner of the trademark, had abandoned the trademark, and that the registration was fraudulent. *See Yurman*, 2000 U.S. Dist. LEXIS 9243, at *10. Plaintiff moved to dismiss the cancellation counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) for lack of standing. *See id*. at *10-11. Judge Keenan granted the motion, on the grounds that the defendant alleged no right to use the plaintiff's trademark, nor any commercial or pecuniary interest in any

19

trademark that would be damaged by continued registration of Plaintiff's trademark.  *See id*.

Quiksilver's pleading is deficient in exactly the same way.  Quiksilver alleges, like defendant in

*Yurman*, that ESPN's registrations should be cancelled because the registrations are fraudulent,

but nowhere does Quiksilver allege that it has a right to ESPN's registered marks or that it has a

commercial or pecuniary interest in a mark that will be damaged by ESPN's registration.

Quiksilver therefore lacks standing to assert a cancellation claim, and the claim accordingly fails

to state a claim upon which relief can be granted.  *See also, e.g., In re Houbigant. Inc.*, 914 F.

Supp. 997, 1002 (S.D.N.Y. 1996) ("[W]hen a plaintiff has no right to use a name shown in a

registered trademark of a defendant, that plaintiff has no standing to seek cancellation of the

trademark.").

## CONCLUSION

For the reasons set forth above, ESPN respectively requests that this Court dismiss

Quiksilver's Second, Third, Fourth, and Fifth Counterclaims.


Dated: New York, New York
July 23, 2008

NIXON PEABODY LLP


By: /s/  Frank Ryan                 .

Frank W. Ryan (FR 0618)
Tamar Y. Duvdevani (TD 7603)
Eileen M. Cunningham (EC 4819)
437 Madison Avenue
New York, New York  10023
(212) 940-3000
(212) 940-3111

*Attorneys for Plaintiff-Counterdefendant
ESPN, Inc.*