UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESPN, INC., | 08 Civ. 4222 (CM) (MHD) |
|                       Plaintiff, | ECF Case |
|     v. | |
| QUIKSILVER, INC., | |
|                       Defendant. | |
| QUIKSILVER, INC., | |
|                       Counterclaimant, | |
|     v. | |
| ESPN, INC., | |
|                       Counterdefendant. | |

**DEFENDANT AND COUNTERCLAIMANT QUIKSILVER, INC.'S
OPPOSITION TO PLAINTIFF AND COUNTERDEFENDANT ESPN, INC.'S MOTION
TO DISMISS SECOND, THIRD, FOURTH AND FIFTH COUNTERCLAIMS**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................... 1

    A. The Federal Rules of Civil Procedure Employ Very Liberal Pleading Standards and 12(b)(6) Motions are Disfavored ..................................... 1

    B. Quiksilver Has More Than Adequately Pled a Claim for Trademark Infringement Under the Lanham Act .................................................... 2

        1. Quiksilver Has Pled a Valid and Protectable Mark ................................... 3

        2. Quiksilver Has Adequately Pled Use in Commerce ................................. 4

        3. Quiksilver Has Adequately Pled Likelihood of Confusion ....................... 5

    C. Quiksilver Has Adequately Pled a Claim for Trademark Dilution Under New York GBL § 260-l in Its Third Counterclaim .................................... 6

    D. Quiksilver Has Adequately Pled a Claim for New York Common Law Unfair Competition in Its Fourth Counterclaim ........................................... 6

    E. Quiksilver Has Standing to Seek Cancellation of ESPN's Registrations in Its Fifth Counterclaim .................................................................. 7

    F. Should the Court Grant ESPN's Motion in Whole or in Part, Quiksilver Requests Leave to Amend ................................................................... 8

III. CONCLUSION .................................................................................................................. 9

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Blanchard Importing & Distrib. Co., Inc. v. Gilman & Son, Inc.*
353 F.2d 400 (1st Cir. 1965) ................................................................................................... 8

*Michelin Tire Corp v. General Tire & Rubber Co.*
202 U.S.P.Q. 294 (T.T.A.B. 1979) ......................................................................................... 3

*Quality Semiconductors, Inc. v. QLogic Corp.*
31 U.S.P.Q.2d 1627 (N.D. Cal. 1994) .................................................................................... 3

*Ronzani v. Sanofi S.A.*
899 F.2d 195 (2d Cir. 1990) .................................................................................................... 8

*Swierkiewicz v. Sorema N.A*
534 U.S. 506, 122 S. Ct. 992 (2002) ....................................................................................... 1

*Thomas v. City of New York*
143 F.3d 31 (2d Cir. 1998) ...................................................................................................... 2

*Troni v. Banca Popolare di Milano*
No. 89 Civ. 3299 (MJL), 1990 U.S. Dist. LEXIS 14160
(S.D.N.Y. Oct. 25, 1990) ......................................................................................................... 2

*Villager Pond, Inc. v. Town of Darien*
56 F.3d 375 (2d Cir. 1995) ...................................................................................................... 2

*Yurman Design, Inc. v. Chaindom Enters.*
No. 99 Civ. 9307, 2000 U.S. Dist. LEXIS 9243 (S.D.N.Y. July 5, 2000) .......................... 7, 8

*Zinerman v. Burch*
494 U.S. 113, 110 S. Ct. 975 (1990) ....................................................................................... 1

**STATUTES**

15 U.S.C. § 1052 ............................................................................................................................ 6

15 U.S.C. § 1064 ........................................................................................................................ 1, 7

15 U.S.C. § 1119 ............................................................................................................................ 1

15 U.S.C. § 1127 ....................................................................................................................... 3, 6

Federal Rules of Civil Procedure Rule 8(a)(2) ............................................................................... 1

Federal Rules of Civil Procedure Rule 12(b)(6) ............................................................................. 8

Federal Rules of Civil Procedure Rule 15(a)(2) ............................................................................. 8

NY General Business Law § 360-1 ................................................................................................ 6

I. **INTRODUCTION**

A complaint or counterclaim need only contain a short and plain statement of the alleged claims, such that the opposing party is apprised of the nature of what is being asserted against them. Without question, ESPN understands the general nature of Quiksilver's claims, which were set forth in considerable detail in Quiksilver's Counterclaims.

In its motion, ESPN attempts to parse the language used by Quiksilver, to argue that certain elements of certain claims have not been pled. By doing so, ESPN seems to take the position that "magic" words must be used. Of course, this is not the law. ESPN's argument must therefore fail, especially given the extremely generous standards of the Federal Rules.

ESPN also challenges Quiksilver's standing to seek cancellation of ESPN's trademark registrations for its X Games marks, claiming that Quiksilver cannot show the requisite damage under 15 U.S.C. §§ 1119 and 1064. ESPN's argument is unfathomable, as it is asserting several of those very registrations against Quiksilver in this lawsuit. This is quintessential damage that creates standing.

Accordingly, ESPN's motion should be denied in its entirety.

II. **ARGUMENT**

A. **The Federal Rules of Civil Procedure Employ Very Liberal Pleading Standards and 12(b)(6) Motions are Disfavored**

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that "[a] pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . ." The "short and plain statement" required by Rule 8(a) "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 998 (2002) (internal citation omitted).

As ESPN admits, the factual allegations in the counterclaim must be accepted as true. *See Zinerman v. Burch*, 494 U.S. 113, 118, 110 S. Ct. 975, 979 (1990). Further, the Court must draw all reasonable inferences in favor of Quiksilver. *Thomas v. City of New York*, 143

F.3d 31, 36 (2d Cir. 1998). The issue on a motion to dismiss, therefore, "is not whether . . . plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (citation omitted).

Thus, in reviewing the sufficiency of a party's allegations, "the court's task is simply to determine whether the plaintiff has a legal right to relief based upon those allegations." *Troni v. Banca Popolare di Milano*, No. 89 Civ. 3299 (MJL), 1990 U.S. Dist. LEXIS 14160, *5 (S.D.N.Y. Oct. 25, 1990). "Few complaints fail to meet this liberal standard, and given the basic precept that a case should be tried on the proof rather than the technical deficiencies of the pleadings, *motions to dismiss pursuant to 12(b)(6) are regarded with great disfavor and are rarely granted*." *Id.* (emphasis added).

**B.    Quiksilver Has More Than Adequately Pled a Claim for Trademark Infringement Under the Lanham Act**

ESPN argues that Quiksilver fails to adequately plead the following elements of a Lanham Act trademark infringement claim: 1) a valid and protectable trademark, 2) that has been used in commerce, 3) and a likelihood of confusion between Quiksilver's mark and ESPN's marks. Motion at 9-14.

Before this Court is ESPN's Complaint and accompanying exhibits, as well as Quiksilver's Answer and Counterclaims. In the aggregate, there is a wealth of information before the Court regarding the nature of Quiksilver, the use of its trademark on its goods, and its injury. Indeed, certain of the elements that ESPN claims is lacking in Quiksilver's Counterclaims are expressly alleged in ESPN's Complaint. For example, citing its own Complaint, ESPN argues in this motion that "Quiksilver is currently using a mark on goods that it sells that ESPN contends is confusingly similar to the ESPN X Games trademarks." Motion at 4. ESPN contends that, "according to information available to ESPN, Quiksilver began using this mark in 2007 . . . ." *Id*. Quiksilver has alleged, however, that the very trademark ESPN cites in its motion at page 4 as being "confusingly similar" to ESPN's trademarks was introduced

by Quiksilver "no later than 1994." Counterclaims ¶¶ 21, 26.

Thus, ESPN pleads in its Complaint that Quiksilver has a trademark that uses the letter X, has attached that trademark to goods that Quiksilver has sold, and which trademark is confusingly similar to ESPN's trademarks. Quiksilver, in its Counterclaims, alleges that its trademark pre-dates ESPN's trademarks by more than a decade.

In addition to the admissions ESPN makes in its own Complaint, Quiksilver's express allegations, as well as the reasonable inferences to be drawn from those allegations, clearly establish the elements ESPN claims are missing from Quiksilver's pleading.

1. Quiksilver Has Pled a Valid and Protectable Mark

Under the Lanham Act, a trademark can consist of "any word, name, symbol, or device, or any combination thereof." 15 U.S.C. § 1127. Even though it did not actually use the exact words "valid" and "protectable"—just as ESPN did not include those words in its own Complaint for trademark infringement—Quiksilver has pled that it has a valid and protectable trademark in the letter X.

A single letter, like "X," can function as a valid and protectable trademark. *See Michelin Tire Corp v. General Tire & Rubber Co.*, 202 U.S.P.Q. 294 (T.T.A.B. 1979) (finding that the letter X was an "exceedingly well-known trademark in the trade and to the general public" and observing that "[t]here is nothing . . . in decisional law to preclude a single letter from functioning as a trademark and, in fact, from serving as an arbitrary and strong mark"); *see also Quality Semiconductors, Inc. v. QLogic Corp.*, 31 U.S.P.Q.2d 1627 (N.D. Cal. 1994) (single letter "Q" is an inherently distinctive trademark). In addition, as to Quiksilver, since the letter or symbol "X" has nothing in particular to do with clothing and related items, and in no way describes or suggests them, nor acts as a category for those types of products, it is not generic, descriptive or suggestive. Instead, it is the arbitrary application of that symbol to the products. *See, e.g.*, *Quality Semiconductors*, 31 U.S.P.Q.2d 1627 at *4 ("Quality's mark qualifies as an inherently distinctive mark deserving of trademark protection in that it is in no way descriptive of Quality's integrated circuit products. The juxtaposition of 'Q' and integrated circuits is purely

arbitrary."). Tellingly, ESPN itself purports to use the symbol "X" as a trademark, and even has trademark applications pending for that symbol. *See* Complaint ¶ 13.

ESPN nevertheless argues that Quiksilver failed to adequately identify its trademark, by merely "show[ing] images of a disparate group of 'designs.'" Motion at 12. But in paragraph 15 of its Counterclaims, Quiksilver states that "[t]he X symbol, which has been incorporated into many different designs, constitutes a trademark of Quiksilver." Quiksilver then goes on, for the next ten paragraphs, to lay out its use of the X symbol trademark over the course of almost 20 years, and expressly states that it has common law rights in that mark and its associated designs (which, as a shorthand, Quiksilver refers to as the "Gen X Brand"). Counterclaims ¶¶ 16-26, 47. These are not a "disparate group" of images; they all contain the X trademark.

Taking Quiksilver's allegation of ornamental use completely out of context, ESPN attempts to argue that Quiksilver has "disavowed" any trademark use of the letter X. Motion at 12. Quiksilver has merely differentiated its use of the X symbol as a trademark, on the one hand, with its use of an X design as ornamentation, on the other hand. Counterclaims ¶ 16 ("Many of the Gen X Brand products *also* featured Xs as additional ornamentation") (emphasis added). It is entirely consistent for Quiksilver to allege *both* trademark and ornamental use of the letter X.

2.   Quiksilver Has Adequately Pled Use in Commerce

ESPN argues that Quiksilver fails to plead that it used the X trademark in commerce. But Quiksilver expressly stated that it placed the X trademark designs on various products, like boardshorts, t-shirts, shorts, pants, jackets, flight suits, caps, wet suits, backpacks, visors, and stickers. *See* Counterclaims ¶¶ 16, 20, 21, 23-25. Further, Quiksilver alleged that "[t]he Gen X Brand has been used in connection with a variety of products and marketing materials," and "[s]ince at least 1989, Quiksilver has consistently used the Gen X Brand on its products." Counterclaims at ¶¶ 16, 46.

ESPN seems to take issue with the fact that Quiksilver alleged "use" rather than setting forth an allegation with the precise words "used in commerce." Quiksilver, of course, is

not required to plead a particular word or phrase. Its allegations clearly establish that its goods are sold in interstate commerce, including those goods that carry Quiksilver's "X" trademark. Indeed, ESPN attaches to its own Complaint examples of Quiksilver products that contain the X trademark. *See* Complaint, Ex. B.

ESPN's arguments that Quiksilver's "pleading fails to allege any use on goods as a signifier of origin," and Quiksilver failed to allege that "the alleged 'Gen X Brand' or any of the designs that allegedly comprise it are used as source identifiers," Motion at 12, are similarly baseless. As noted above, Quiksilver detailed its use of the X trademark over a 20 year period in its Counterclaims, including use of the mark in marketing materials and action films featuring famous Quiksilver athletes. Moreover, Quiksilver expressly alleges that "[b]y virtue of its longstanding use of the Gen X Brand, Quiksilver has developed a valuable reputation for quality and goodwill associated with that brand. Consumers recognize and associate the Gen X Brand as originating from Quiksilver." Counterclaims ¶ 47.

In any event, Quiksilver is not required to "establish" that its trademark is a source identifier at the pleading stage; that is a question for the fact finder. Not surprisingly, none of the numerous cases cited by ESPN in its Motion even mentions "establishing" the mark as a source identifier as a required element that must be expressly pled. *See* Motion at 9-11. Quiksilver's allegations are more than sufficient to plead that it has a valid and protectable trademark that it has used in commerce.

3. Quiksilver Has Adequately Pled Likelihood of Confusion

ESPN next faults Quiksilver for failing to expressly state in its Counterclaims that there is a likelihood of confusion between the parties' marks. ESPN, however, has already alleged that there is a likelihood of confusion between its X Games marks and Quiksilver's trademarks that contain the letter "X." Complaint ¶ 22. Based on those allegations, Quiksilver has brought a counterclaim, which essentially states that, if there is a likelihood of confusion between the parties' marks, such confusion is being caused by ESPN, the junior user. Indeed, Quiksilver specifically alleges in paragraph 49 that, based on ESPN's allegations that the parties'

marks cannot co-exist, ESPN—as the junior user—is engaged in trademark infringement.

ESPN claims that paragraph 49 is insufficient because Quiksilver did not allege use of an infringing mark by ESPN. Motion at 13. This is nonsensical. There is no dispute that ESPN is, in fact, using X Games marks. ESPN's entire Complaint is based on this premise. Moreover, Quiksilver did expressly allege that "ESPN has begun using these [X Games] logos on its X Games website . . . ." Counterclaims ¶ 35.

C. **Quiksilver Has Adequately Pled a Claim for Trademark Dilution Under New York GBL § 260-l in Its Third Counterclaim**

ESPN admits that, to state a claim under NY General Business Law § 360-1, Quiksilver need only allege that its mark is distinctive. Motion at 16, 17. Quiksilver alleges that "[b]y virtue of its longstanding use of the Gen X Brand, Quiksilver has developed a valuable reputation for quality and goodwill associated with that brand. Consumers recognize and associate the Gen X Brand as originating from Quiksilver." Counterclaims ¶ 47.

While Quiksilver did not actually use the word "distinctive," Rule 8 does not require such precision in pleadings. Indeed, "distinctive" means able to identify and distinguish the goods of the trademark owner from the goods of others. *See* 15 U.S.C. §§ 1052, 1127. This is precisely what Quiksilver has alleged. While ESPN claims that "as a matter of law" Quiksilver's marks are "not famous or extremely strong," Motion at 18, such a statement has absolutely no factual support and is inappropriate in a 12(b)(6) motion. Whether Quiksilver can ultimately prove that its Gen X Brand is distinctive will be determined at or before trial.

D. **Quiksilver Has Adequately Pled a Claim for New York Common Law Unfair Competition in Its Fourth Counterclaim**

ESPN's argument regarding Quiksilver's Fourth Counterclaim for state law unfair competition hinges on its argument that Quiksilver failed to adequately allege a valid and protectable trademark and a likelihood of confusion. Motion at 11-12. As stated above, Quiksilver's Lanham Act claim allegations are more than sufficient. Accordingly, its state law unfair competition claim is similarly appropriate.

### E. Quiksilver Has Standing to Seek Cancellation of ESPN's Registrations in Its Fifth Counterclaim

Under 15 U.S.C. § 1064, cancellation of a registration of a mark may be filed "by any person who believes that he is or will be damaged . . . by the registration of a mark . . . ." Quiksilver has easily satisfied this requirement by alleging that it "is being damaged by the fraudulently-obtained X Games Federal Registrations, because those registrations are either being asserted against Quiksilver in this litigation or may be asserted against Quiksilver in future lawsuits or opposition/cancellation proceedings." Motion at 19, *see also* Counterclaims ¶ 64.

ESPN characterizes this basis for standing as "insufficient," because standing can only be found when an assertion is made of "an actual commercial or pecuniary interest in [one's] own mark." Motion at 19, quoting *Yurman Design, Inc. v. Chaindom Enters.*, No. 99 Civ. 9307, 2000 U.S. Dist. LEXIS 9243, at *12-13 (S.D.N.Y. July 5, 2000). Without question, Quiksilver has an actual commercial and pecuniary interest in its own X trademark and the Gen X Brand. Indeed, Quiksilver details many uses it has made of the X trademark over almost 20 years. Certainly, Quiksilver has an interest in the trademark that ESPN is challenging in this lawsuit.

If ESPN somehow prevails in this lawsuit, Quiksilver could potentially be enjoined from using its X trademark, and may have to pay compensatory and exemplary damages to ESPN based on its past use of that trademark. *See* Complaint, Prayer for Relief ¶¶ 1, 4-5. Quiksilver thus has the most immediate and serious type of potential damage, which amply provides a sufficient basis for standing to bring its cancellation counterclaims.

To the extent ESPN's standing argument is premised on the assumption that Quiksilver has not actually alleged that it has a valid and protectable trademark, such an argument is wrong both factually and legally. Factually, as discussed above, Quiksilver has adequately pled its own trademark rights. Legally, "the right to cancellation is not limited to those who have made prior use of the term as a technical trademark. Any prior use of a name or word is sufficient to warrant cancellation on the ground that the prior user is injured by such

registration." *Blanchard Importing & Distrib. Co., Inc. v. Gilman & Son, Inc.*, 353 F.2d 400, 401 (1st Cir. 1965).

To support its position on standing, ESPN mischaracterizes the facts of *Yurman*, the principal case it relies upon. In *Yurman*, the plaintiff brought copyright claims against the defendant for copying its jewelry designs, and mentioned in passing in its complaint several of its trademarked jewelry collection names. In response to the copyright infringement claims, the defendant brought a counterclaim to cancel the plaintiff's trademark registration for one of its jewelry collection names. In granting the plaintiff's motion to dismiss this counterclaim, the court observed that "[t]he Complaint does not include any claims for trademark infringement or any legal claims involving trademarks," and concluded that "the validity of [plaintiff]'s registered trademark is not in issue for purposes of conferring standing on [defendant]." 2000 U.S. Dist. LEXIS 9243, at *14. Here, by contrast, ESPN has brought trademark infringement claims against Quiksilver, and has asserted several of the challenged federal trademark registrations against Quiksilver as part of those infringement claims.[1] ESPN has placed those registrations at issue in this case, and Quiksilver has standing to challenge their validity.

F.  **Should the Court Grant ESPN's Motion in Whole or in Part, Quiksilver Requests Leave to Amend**

Quiksilver does not believe that its Counterclaims suffer from any deficiencies that warrant dismissal under Rule 12(b)(6). If, however, the Court determines otherwise, Quiksilver requests leave to amend its Counterclaims to address any deficiencies identified by the Court. As noted in Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." Moreover, when a motion to dismiss under Rule 12(b)(6) is granted, "'the usual practice is to grant leave to amend the complaint.'" *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (internal citation omitted). Accordingly, Quiksilver respectfully requests the opportunity to amend its Counterclaims, should the Court grant the Motion in whole or in part.

---

[1]  Tellingly, ESPN does not provide any assurances that it will not assert the other challenged registrations against Quiksilver in the future.

### III.     CONCLUSION

Quiksilver's very detailed counterclaims are more than sufficient to place ESPN on notice of the substance of those claims. Thus, ESPN's Motion to Dismiss should be denied in its entirety. If the Court, however, finds any deficiencies in Quiksilver's allegations, Quiksilver respectfully requests leave to amend.

Dated: Costa Mesa, California  
           August 6, 2008

LATHAM & WATKINS LLP

By:     /s/ Mark A. Finkelstein  
       Kenneth Conboy (KC 1154)  
       Jaron R. Shipp (JS 6365)  
       885 Third Avenue, Suite 1000  
       New York, New York 10022  
       (212) 906-1200  
       kenneth.conboy@lw.com  
       jaron.shipp@lw.com

       Mark A. Finkelstein (MF 1040)  
       650 Town Center Drive, Suite 2000  
       Costa Mesa, California 92626  
       (714) 540-1235  
       mark.finkelstein@lw.com  
       Admitted *pro hac vice*

       Jennifer L. Barry (JB 0245)  
       600 West Broadway, Suite 1800  
       San Diego, California 92101  
       (619) 236-1234  
       jennifer.barry@lw.com  
       Admitted *pro hac vice*

       Attorneys for Defendant  
       and Counterclaimant  
       Quiksilver, Inc.

**CERTIFICATE OF SERVICE**

  I hereby certify that on August 6, 2008, I caused the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF System.

  I further certify that on this same date, I caused the attached document to be hand delivered as a Chambers Copy to:

Hon. Colleen McMahon
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St., Room 640
New York, NY 10007

            /s/ Mark A. Finkelstein
            Mark A. Finkelstein