UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESPN, INC., <br><br> Plaintiff, <br><br> - vs - <br><br> QUIKSILVER, INC., <br><br> Defendant. <br><br><br> QUIKSILVER, INC., <br><br> Counterclaimant, <br><br> - vs - <br><br> ESPN, INC., <br><br> Counterdefendant. | CIVIL NO.: 08 Civ. 4222 (CM) (MHD) |

**PLAINTIFF-COUNTERDEFENDANT ESPN INC.'S
MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION TO DISMISS
QUIKSILVER'S SECOND, THIRD, FOURTH AND FIFTH COUNTERCLAIMS**

NIXON PEABODY LLP
Attorneys for Plaintiff-
Counterdefendant ESPN, Inc.
437 Madison Avenue
New York, New York 10022
(212) 940-3000

Frank W. Ryan
Tamar Y. Duvdevani
Eileen M. Cunningham

11112629.5

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.    QUIKSILVER HAS FAILED TO MEET THE LIBERAL PLEADING STANDARDS REQUIRED BY F.R.C.P. 8(A)(2) ................................................................................ 2

II.    QUIKSILVER'S OPPOSITION FAILS TO SHOW THAT ITS COUNTERCLAIMS STATE A CLAIM UNDER THE LANHAM ACT OR ANY RELATED STATE LAW CLAIMS ................................................................................................................ 3

    A.    Quiksilver Fails To Plead That It Has A Valid Trademark ................................... 4

    B.    Quiksilver Fails To Plead That It Has A Valid Trademark That Is Used In Commerce ................................................................................................................ 5

    C.    Quiksilver Fails To Plead That ESPN Used Any Quiksilver Valid and Protectable Trademark, Or That There Is A Likelihood Of Confusion Between Such Mark and the ESPN X-Games Mark ................................................................... 6

III.    QUIKSILVER FAILS TO ADEQUATELY PLEAD A CLAIM FOR TRADEMARK DILUTION UNDER NEW YORK GBL § 360-l ............................................................. 7

IV.    QUIKSILVER'S OPPOSITION FAILS TO SHOW THAT IT HAS STANDING TO SEEK CANCELLATION OF THE X GAMES FEDERAL REGISTRATION ............... 9

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320 (S.D.N.Y. 2008) .................................... 9

*Am. Home Prod. Corp. v. Chattem, Inc.*, 84 Civ. 3671, 1986 U.S. Dist. LEXIS 25051 (S.D.N.Y. May 27, 2006) ........................................................................... 7

*C.V. Starr & Co. v. American Int'l Group Inc.*, 06 Civ. 2157, 2006 U.S. Dist. LEXIS 65605 (S.D.N.Y Sept. 14, 2006) ..................................................................... 3

*Douglas v. Osteen*, 07-3925, 2008 U.S. Dist. LEXIS 40152 (E.D. Pa. May 16, 2008) ................................................................................................................................... 5

*Olay Co. v. Cococare Prod., Inc.*, 218 U.S.P.Q. (BNA) 1028, 1983 U.S. Dist. LEXIS 17613 (S.D.N.Y. Apr. 19, 1983) ....................................................................... 7

*Perkins Sch. For the Blind v. Maxi-Aids, Inc.*, 274 F. Supp. 2d 319 (E.D.N.Y.) ............... 3

*S. Cherry St. LLC v. Hennessee Group LLC (In re Bayou Hedge Fund Litig.)*, 534 F. Supp. 2d 405 (S.D.N.Y. 2007) ............................................................................. 3, 5

*SMJ Group, Inc. v. 417 Lafayette Rest. LLC*, 06 Civ. 1774, 2006 U.S. Dist. LEXIS 61645 (S.D.N.Y. Aug. 30, 2006) ................................................................ 7, 8

*Solow v. BMW (US) Holding Corp.*, 97 Civ. 1373, 1998 U.S. Dist. LEXIS 16059 (S.D.N.Y. Oct. 13, 1998) ................................................................................................. 3

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 112 S. Ct. 922 (2002) .................................. 2

*Star Indust., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373 (2d Cir. 2005) ........................... 4, 5

*World Wide Comm'ns, Inc. v. Rozar*, 96 Civ. 1056, 1997 U.S. Dist. LEXIS 20596 (S.D.N.Y. Dec. 30, 1997) ....................................................................................... 6

*Yurman Design, Inc. v. Chaindom Enters.*, No 99 Civ. 9307, 2000 U.S. Dist. LEXIS 9243 (S.D.N.Y. July 5, 2000) .............................................................................. 9

### STATE CASES

*Marino Indust. Corp. v. Kahn Lumber Co., Inc.*, 61 A.D.2d 978 (2nd Dep't 1978) .......... 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESPN, INC., <br><br> Plaintiff, <br><br> - vs - <br><br> QUIKSILVER, INC., <br><br> Defendant. | CIVIL NO.: 08 Civ. 4222 (CM) (MHD) |
| QUIKSILVER, INC., <br><br> Counterclaimant, <br><br> - vs - <br><br> ESPN, INC., <br><br> Counterdefendant. | |

**PLAINTIFF-COUNTERDEFENDANT ESPN INC.'S
MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION TO DISMISS
QUIKSILVER'S SECOND, THIRD, FOURTH AND FIFTH COUNTERCLAIMS**

Plaintiff and Counterdefendant ESPN, Inc. ("ESPN") respectfully submits this Memorandum of Law in Further Support of its Motion to Dismiss Defendant and Counterclaimant Quiksilver, Inc.'s ("Quiksilver") Second, Third, Fourth, and Fifth Counterclaims ("Counterclaims") Pursuant to Fed. R. Civ. P. 12(b)(6).

**PRELIMINARY STATEMENT**

Quiksilver's Counterclaims cannot survive ESPN's Rule 12(b)(6) Motion to Dismiss, and its Opposition to the same fails to show otherwise. In the Opening Brief, ESPN demonstrated that Quiksilver failed to state claims for trademark infringement or unfair competition because it

11112629.5

(1) failed to plead that it has a valid and protectible trademark that it has used in commerce, and (2) failed to plead that ESPN has used any of Quiksilver's valid and protectible trademarks or that there is a likelihood of consumer confusion between Quiksilver's marks and ESPN's marks. ESPN also demonstrated that Quiksilver failed to plead a claim for state law dilution and lacks standing to seek cancellation of ESPN's trademarks. Quiksilver's Opposition fails to refute these arguments in any meaningful way, and instead glosses over applicable law and pleading standards, relaying instead on the mantra that 12(b)(6) motions are disfavored. Quiksilver's Opposition only confirms that ESPN's Motion to Dismiss should be granted in its entirety.

## ARGUMENT

**I.    QUIKSILVER HAS FAILED TO MEET THE LIBERAL PLEADING STANDARDS REQUIRED BY F.R.C.P. 8(A)(2)**

As Quiksilver references in its Opposition,

> Rule 8(a)(2) of the Federal Rules of Civil Procedure ["F.R.C.P."] provides that '[a] pleading that states a claim for relief must contain : . . . a short a plain statement of the claim showing that the pleader is entitled to relief. . . .' The 'short and plain statement' required by Rule 8(a) 'must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."'

Opposition, p.1, citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 112 S.Ct. 922, 998 (2002).

By failing to provide even the smallest inkling of exactly what trademark it claims ESPN is infringing, Quiksilver does not provide ESPN with "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* Accordingly, Quiksilver asks that this Court allow it to proceed in litigation without any notice to ESPN of what constitutes its alleged infringing behavior.

While Quiksilver dutifully notes in the Opposition that the "factual allegations in the counterclaim must be accepted as true" (Opposition, p. 1), it fails to cite to a single paragraph in its Counterclaims that actually contains a "factual allegation." By simply reiterating the standard, Quiksilver does nothing to address the fact that it failed to plead even the most basic elements of its causes of actions. Additionally, while claims may be plead in a short and plain statement, Quiksilver ignores the fact that its claims must also be "plausible on [their] face," and "a formulaic recitation of the elements of a cause of action will not do." *S. Cherry St. LLC v. Hennessee Group LLC (In re Bayou Hedge Fund Litig.)*, 534 F. Supp. 2d 405, 413 (S.D.N.Y. 2007) (McMahon, J.). As discussed in the Opening Brief and herein, Quiksilver's counterclaims are simply not plausible, and, moreover, fail to even meet the unacceptable level of the "formulaic recitation" rejected by courts. Accordingly, they must be dismissed.

II.  **QUIKSILVER'S OPPOSITION FAILS TO SHOW THAT ITS COUNTERCLAIMS STATE A CLAIM UNDER THE LANHAM ACT OR ANY RELATED STATE LAW CLAIMS**

In order to state a claim for trademark infringement under the Lanham Act, "a plaintiff *must* show that 'it has a valid mark entitled to protection and that defendant's use of it is likely to cause confusion." Motion, p. 9, quoting *Perkins Sch. For the Blind v. Maxi-Aids, Inc.*, 274 F. Supp. 2d 319, 323 (E.D.N.Y.) (citations omitted) (emphasis added). The elements of New York common law trademark infringement and unfair competition are essentially the same. *See C.V. Starr & Co. v. American Int'l Group Inc.*, 06 Civ. 2157, 2006 U.S. Dist. LEXIS 65605, at *10 (S.D.N.Y Sept. 14, 2006) ("Standards for trademark infringement under New York common law are substantively identical to the Lanham Act."); *Solow v. BMW (US) Holding Corp.*, 97 Civ. 1373, 1998 U.S. Dist. LEXIS 16059, at *6 (S.D.N.Y. Oct. 13, 1998) ("As to unfair competition, the essence of such a cause of action is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion . . . as to the origin of the goods."). Because

- 3 -

11112629.4

Quiksilver's Opposition fails to provide any substantive rebuttal to ESPN's Motion on any of these essential elements, its claims must be dismissed.

A.   Quiksilver Fails To Plead That It Has A Valid Trademark

In its Opposition, Quiksilver incompletely quotes 15 U.S.C. § 1127, noting only that this provision defines a trademark as "any word, name, symbol, or device, or any combination thereof." Opposition, p. 3. Notably, Quiksilver fails to quote the language which completes that sentence – " . . . used by a person . . . to identify or distinguish his or her goods . . . and to indicate the source of the goods . . . ." 15 U.S.C. § 1127. By failing to provide any "word, name, symbol or device" that serves as a source identifier for Quiksilver goods, it is indisputable that Quiksilver fails to plead a valid mark.

Tellingly, Quiksilver's Opposition fails to provide even a single reference to a consistent stylized usage of its "trademark" in its Counterclaims. This is because it cannot do so. Quiksilver states that "[it] has merely differentiated its use of the X symbol as a trademark, on the one hand, with its use of an X design as ornamentation, on the other hand." Even assuming *arguendo* this were true, which it is not, Quiksilver never provides a delineation between which uses of the "X" are ornamentation and which uses are trademarks. Thus, ESPN is provided with no notice upon which it can adequately defend the claim. Quiksilver simply fails to plead a valid trademark, mandating dismissal of its claims.

Attempting to garner support via law from other jurisdictions, Quiksilver notes that a single letter, like an "X", can serve as a valid and protectible mark. However, Quiksilver's failure to cite precedent from much closer to home is potentially more telling. In *Star Indust., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373 (2d Cir. 2005), a liquor company attempted to trademark its stylized "O" which designated its orange-flavored vodka. The mark was described by the District Court as a "large elliptical letter 'O' appearing below the 'Georgi' logo and

- 4 -

surrounding all of the other elements [on the label]." *Star Indust., Inc.*, 412 F.3d at 379. The Second Circuit found the mark to be protectible, stating "[u]nshaded linear representations of common shapes or letters are referred to as 'basic.' . . . However, stylized letters or shapes are not 'basic' and are protectable when original within the relevant market." *Id*. at 383. The court continued that "Star's 'O' is *sufficiently stylized to be inherently distinctive* and therefore protectable as a trademark. It is stylized with respect to shading, border, and thickness, and each of these design elements distinguishes it from the simple or basic shapes and letters that have been held unprotectable." *Id*. (emphasis added.) Unlike ESPN, which has asserted trademark infringement claims concerning its particular stylized X Games logos, Quiksilver claims that "[t]he X symbol, which has been incorporated into many different designs, constitutes a trademark of Quiksilver." Opposition, p. 4, Counterclaim ¶ 15. Such a pleading, which clearly describes an unshaded linear representation (the X symbol), does not identify a protectible trademark. *See Star Indust., Inc.*, 412 F.3d at 383.

      B.      <u>Quiksilver Fails To Plead That It Has A Valid Trademark That Is Used In Commerce</u>

Quiksilver also fails to plead that any valid trademark is used in commerce. Its simple allusion to "use" on goods does not constitute a proper pleading of use in commerce as a signifier of origin. *See In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d at 413 ("a formulaic recitation of the elements of a cause of action will not do"); *see also*, e.g., *Douglas v. Osteen*, 07-3925, 2008 U.S. Dist. LEXIS 40152, at *16-17 (E.D. Pa. May 16, 2008) ("Because Plaintiff does not allege (and cannot prove) that the phrase 'eyes of faith' distinguishes his book from the products of others, Plaintiff has failed to state a claim for trademark infringement under § 1125(a)."). As such, Quiksilver fails to prove the second element of trademark infringement, and its claim should be dismissed.

    C.    <u>Quiksilver Fails To Plead That ESPN Used Any Quiksilver Valid and Protectable Trademark, Or That There Is A Likelihood Of Confusion Between Such Mark and the ESPN X-Games Mark</u>

Quiksilver erroneously asserts that because ESPN properly pled the necessary element of likelihood of confusion in its own trademark infringement claims, Quiksilver may ride ESPN's coattails to a sufficient pleading. *See* Opposition, p.5. This is simply not the case. First, Quiksilver must plead all elements of its own claim, and not rely upon ESPN's pleadings to do its work. Second, even if it were allowed to allude to ESPN's properly pled complaint, ESPN's complaint is specific to the "Infringing Mark" as defined therein, and not to the amorphous, mythical "Gen X Brand" Quiksilver alleges.

A counterclaimant must plead all elements of its claims. *See World Wide Comm'ns, Inc. v. Rozar*, 96 Civ. 1056, 1997 U.S. Dist. LEXIS 20596, at *28 (S.D.N.Y. Dec. 30, 1997) (finding that where a counterclaim failed to plead facts establishing all elements of a claim, it must be dismissed); *Marino Indust. Corp. v. Kahn Lumber Co., Inc.*, 61 A.D.2d 978, 978 (2nd Dep't 1978) ("Good practice requires that the counterclaim be drawn so that it contains all of the material elements of the cause of action . . . . At present, some of those elements are to be found only in extrinsic papers. Therefore, we have dismissed the counterclaim for failure to state a cause of action . . . ."). Quiksilver has not pled the element of likelihood of consumer confusion between whatever its Gen X Brand is supposed to be and whatever ESPN marks allegedly infringe it, and cannot rely upon ESPN's proper pleading to correct this problem. As such, its counterclaims should be dismissed. *See id.*

Even if Quiksilver were entitled to depend upon ESPN's well pled complaint, this is not a case where Quiksilver is simply reversing the allegations of the Complaint and claiming that the Infringing Mark is being infringed by the X Games logos. ESPN's Complaint is specific to the Infringing Mark and the X Games logos, as defined therein. Quiksilver's Counterclaims include

"examples" of something it calls the "Gen X Brand," comprised of designs like a small boy with an "X" for a head (Counterclaims ¶ 21), and a man standing behind an X-Ray machine (Counterclaims ¶ 20). Beyond the fact that neither of these pictures constitute a trademark for any potential brand Quiksilver may actually have, there can be no suggestion that ESPN's properly pled complaint, that was tailored specifically to the "Infringing Mark," can somehow be repackaged into a clearly spurious counterclaim based upon various and sundry uses of the "X" symbol on Quiksilver sports equipment and apparel. In sum, Quiksilver fails to plead likelihood of confusion, and its counterclaims should accordingly be dismissed.

### III. QUIKSILVER FAILS TO ADEQUATELY PLEAD A CLAIM FOR TRADEMARK DILUTION UNDER NEW YORK GBL § 360-L

The New York General Business Law ("GBL") § 360-l was designed to "protect famous trademarks from use by other non-competing goods: honing in on the dilution rather than the confusion caused by such use." *Am. Home Prod. Corp. v. Chattem, Inc.*, 84 Civ. 3671, 1986 U.S. Dist. LEXIS 25051, at *17 (S.D.N.Y. May 27, 2006) (emphasis added). Thus, in order to successfully plead a claim under GBL § 360-l, a party must plead that the mark is distinctive, if not famous or extremely strong. *See Olay Co. v. Cococare Prod., Inc.*, 218 U.S.P.Q. (BNA) 1028, 1983 U.S. Dist. LEXIS 17613, at *57 (S.D.N.Y. Apr. 19, 1983); *SMJ Group, Inc. v. 417 Lafayette Rest. LLC*, 06 Civ. 1774, 2006 U.S. Dist. LEXIS 61645, at *9-11 (S.D.N.Y. Aug. 30, 2006). At no time in its Counterclaims does Quiksilver actually suggest it has a distinctive mark – and its inability to provide even the suggestion of an identifiable trademark shows by its very definition that Quiksilver has not pleaded distinctiveness. In its Opposition, Quiksilver relies on circular logic by suggesting – with absolutely no legal support – that the language which states, "Consumers recognize and associate the Gen X Brand as originating from Quiksilver" is sufficient to constitute a pleading of distinctiveness. Opposition, p. 6. There is no evidence in

- 7 -

its Counterclaims, however, to suggest that such a brand even exists – the purported "Gen X Brand" apparently consists of various articles decorated with a number of independent versions of the letter "X", differing in shape, size, color, fill pattern, positioning, accompanying elements and font. This so-called "brand" is an artifice created directly for litigation, and as such cannot help Quiksilver meet its pleading burden.

Even if the court were to except that a "Gen X Brand" exists, Quiksilver's Counterclaims state that the purported "Gen X Brand" is comprised of many different designs, which automatically negates any claims of distinctiveness. As such, Quiksilver's claim under GBL § 360-l should be dismissed.

ESPN's claim that Quiksilver's purported "Gen X Brand" is not distinctive, famous or extremely strong as a matter of law has not been rebutted by Quiksilver. Quiksilver fails to provide a single case to show that ESPN has erred in its statement, and instead relies upon the comment that such a claim is "inappropriate in a 12(b)(6) motion." This statement ignores the cases cited by ESPN in which GBL § 360-l claims were in fact dismissed due to this very reason. *See, e.g., SMJ Group, Inc.*, 2006 U.S. Dist. LEXIS 61645, at *9-12 (Rule 12(b)(6) motion granted as to state law dilution claim where (1) plaintiff failed to allege sufficient facts to state a claim; (2) neither continuous use of a mark nor a high volume of sales is sufficient to establish a claim for dilution; and (3) "plaintiffs must allege that their marks are sufficiently distinctive and famous in the eyes of the general public. <u>Plaintiffs' allegation that the marks are recognized by customers of the restaurant does not establish the requisite level of fame or distinctiveness</u>.") (emphasis added). Despite what Quiksilver may try to suggest, it provides no support for its arguments, and as such, has effectively waived any objection to ESPN's claim of non-distinctiveness as a matter of law.

### IV. QUIKSILVER'S OPPOSITION FAILS TO SHOW THAT IT HAS STANDING TO SEEK CANCELLATION OF THE X GAMES FEDERAL REGISTRATION

Pursuant to 15 U.S.C. § 1119, in order to seek cancellation of a federal trademark registration, a plaintiff must satisfy the standing requirements under 15 U.S.C. § 1064. *Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 333 n. 16 (S.D.N.Y. 2008). These requirements include a showing that the claimant will be "damaged": in other words, a pleading must assert "an actual commercial or pecuniary interest in its own mark." *Yurman Design, Inc. v. Chaindom Enters.*, No 99 Civ. 9307, 2000 U.S. Dist. LEXIS 9243, at *12-13 (S.D.N.Y. July 5, 2000). Quiksilver asserts in its Opposition that "without question, Quiksilver has an actual commercial and pecuniary interest in its own X trademark and the Gen X Brand." Putting aside the fact that Quiksilver has yet to identify what its "own X trademark" actually is, and what the "Gen X Brand" actually constitutes, Quiksilver still cannot cite to a single paragraph in its Counterclaims in which it actually *pleads* that it has or will suffer the requisite damage that lends standing to seek cancellation of the X-Games trademark registrations.[1]

Quiksilver attempts to overcome this problem by suggesting that its potential loss in this action could provide it with damages. These damages, however, do not stem from an actual interest in the mark, as required by law. *Id*. Instead, such alleged damages stem from the litigation itself, which is wholly unrelated to registration of the marks and not the type of damage that allows standing for the cancellation claim. *See* 15 U.S.C. § 1119.

---

[1] Moreover, where, as here, "a [petitioner] has no right to use a name shown in a registered trademark of [another party], that [petitioner] has no standing to seek cancellation of the trademark." *Yurman Design, Inc. v. Chaindom Enters.*, No 99 Civ. 9307, 2000 U.S. Dist. LEXIS 9243, at *12 (S.D.N.Y. July 5, 2000). Quiksilver does not, because it cannot, provide any factual information which suggests that it has an interest in the federally registered X-Games word mark.

Finally, Quiksilver attempts to mischaracterize the holding in *Yurman*, suggesting that because ESPN has brought trademark infringement claims against Quiksilver, the *Yurman* decision does not apply. Opposition, p. 8. But it is not the mere existence of trademark infringement claim that provides standing under the statute – instead, as noted above, it is a statement of interest in the mark itself, which Quiksilver has failed to provide. With this failure, Quiksilver's Counterclaim should be dismissed.

## CONCLUSION

For the reasons set forth above, ESPN respectfully requests that this Court dismiss Quiksilver's Second, Third, Fourth, and Fifth Counterclaims.

Dated: New York, New York
August 13, 2008

NIXON PEABODY LLP

By: /s/ Frank Ryan

Frank W. Ryan (FR 0618)
Tamar Y. Duvdevani (TD 7603)
Eileen M. Cunningham (EC 4819)
437 Madison Avenue
New York, New York  10023
(212) 940-3000
(212) 940-3111

*Attorneys for Plaintiff-Counterdefendant ESPN, Inc.*