UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

ESPN, INC.,

        Plaintiff,

- against -

QUIKSILVER, INC.,

        Defendant.

-------------------------------------------------------x

QUIKSILVER, INC.,

        Counterclaimant,

- against -

ESPN, INC..,

        Counterdefendant.

-------------------------------------------------------x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/15/08
```

08-cv-4222 (CM) (HBP)

MEMORANDUM DECISION AND ORDER DENYING MOTION TO
TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA

McMahon, J.:

On May 2, 2008, ESPN, INC. ("ESPN") filed a complaint against Quiksilver, Inc. ("Quiksilver") alleging trademark infringement under Section 32(a) of the Lanham Trademark Act, 15 U.S.C. § 1114(a), trademark infringement and unfair competition under 15 U.S.C. § 1125(a), anti-dilution under New York GBL § 360-1, and trademark infringement under New York common law. On June 16, 2008, Quiksilver filed an answer denying many of the allegations, asserting affirmative defenses, and counterclaims for declaratory relief, trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C.

1

§ 1125(a), trademark dilution under NY GBL § 360-1, unfair competition under New York common law, and cancellation of federal registrations under 15 U.S.C. § 1064 and 15 U.S.C. § 1119.

ESPN, a Delaware corporation with a principal place of business in Bristol, Connecticut, is a multinational sports entertainment company. (Compl. ¶ 2.) In the mid-1990's, ESPN created the X Games, an international alternative sports competition featuring sports such as skateboarding, snowboarding, and surfing. (Id. ¶ 4-5.) ESPN owns pending trademark applications for its stylized X Games mark, which it affixes on goods for sale at X Games events, on the internet, and in department stores. (Id. ¶ 13-16.)

Quiksilver, a Delaware corporation with a principal place of business in Huntington Beach, California, is a manufacturer of boardshorts and other clothing products for surfers. (Answer ¶ 6-7.) Quiksilver products are sold throughout the world, primarily in surf shops, snow shops, skate shops, and department stores. (Id. ¶ 11.) Quiksilver claims that it began using the "X" symbol on its products since no later than 1986. (Id. ¶ 15.)

Quiksilver has filed a motion for transfer of venue to the Central District of California. For the reasons set forth below, this motion is DENIED.

## Analysis

28 U.S.C. § 1404(a) provides, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been through." Thus, in order to obtain a transfer of venue, "the moving party bears the burden of establishing 1) that the action is one that 'might have been brought' in the district to which the movant seeks to have it transferred, and 2) that transfer is appropriate based on the convenience of the parties, the convenience of witnesses, and the interests of justice." Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 400-01 (S.D.N.Y. 2004); see also Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 56 (S.D.N.Y. 2001). In determining whether to transfer venue under § 1404(a), "courts employ an individualized, case-by-case consideration of convenience and fairness." Posven, C.A., 303 F. Supp. 2d at 401 (internal citations omitted). This determination is within the "sound discretion" of the district court. Id.

### 1. *This Action Might Have Been Brought in the Central District of California*

ESPN does not dispute that this action could have been filed in the Central District of California, because "the transferee court would have had subject matter jurisdiction and personal jurisdiction over" Quiksilver, and "venue would have been proper in the transferee court." Id. Quiksilver's Huntington Beach, California, headquarters are located in the Central District of California. Thus, Quiksilver is clearly subject to personal jurisdiction in California, and venue is proper under 28 U.S.C. § 1391(b)(1)-(2).

3

## 2. *Transfer is Not Appropriate Based on Convenience to the Parties and Witnesses, and the Interest of Justice*

Since this action might have been brought in the Central District of California, the only question is "whether transfer is appropriate based on the balance of convenience to parties and witnesses, and the interests of justice." JFP Touring, LLC v. Polk Theatre, Inc., 2007 U.S. Dist LEXIS 51388, at *36 (S.D.N.Y. 2007). In balancing the convenience and fairness of a proposed transfer, courts in this Circuit look to eight factors: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based upon the totality of the circumstances." Posven, C.A., 303 F. Supp. 2d at 404. "There is no rigid formula for balancing these factors and no single one of them is determinative." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). "Instead, weighing the balance is essentially an equitable task left to the Court's discretion." Beatie and Osborn LLP v. Patriot Scientific Corp., 431 F. Supp. 2d 367, 395 (S.D.N.Y. 2006) (internal quotations and citation omitted). However, plaintiff's choice of forum should be accorded deference in the event that other factors do not weigh strongly in favor of transfer. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be

disturbed." Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000) (internal quotations and citation omitted).

Here, the other factors do not weigh strongly enough in favor of transfer.

### a. The Convenience of Witnesses

"Convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." Fuji Photo Film Co., Ltd. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (internal citation omitted). Moreover, "[t]he convenience of non-party witnesses is accorded more weight than that of party witnesses." Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005) (internal citations omitted). When weighing this factor, "a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." Herbert Ltd. Partnership v. Electronic Arts Inc., 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004); accord Fuji Photo Film Co., Ltd., 415 F. Supp. 2d at 373.

In an infringement action, the most critical witnesses may be "those officers and employees who were involved in the design, production, and sale of the [allegedly infringing] products." AEC One Stop Group, Inc. v. CD Listening Bar, Inc., 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004); see also International Securities Exchange, LLC v. Chicago Bd. Options Exchange Inc., 2007 WL 1541087, at *3 (S.D.N.Y. May 24, 2007); Kwik Goal, Ltd. v. Youth Sports Publishing, Inc., 2006 WL 1517598, at *4 (S.D.N.Y. May 31, 2006).

5

The party witnesses from both sides would obviously find it more convenient to appear close to where they work (New York for ESPN; Huntington Beach, California for Quiksilver). Therefore, the convenience of non-party witnesses is the crucial issue. On the record before me, this factor weighs in favor of transfer.

No X Games events have ever been held in New York, and ESPN does not assert that any non-party witnesses reside in of close to this district. Nor does ESPN identify a single non-party witness who would be inconvenienced by litigating in California. In fact, the non-party witnesses it mentioned - those participants who have worn allegedly infringing clothing - all live closer to California than New York.

However, of the 10 former Quiksilver or ESPN employees that the defendant identified as expected witnesses, nine were located in California and the 10th resided in Hawaii. See Defendant Memorandum in Support of Motion for Transfer at 7-8. Additionally, Quiksilver cited two witnesses who have refused to travel to New York, another who may not be inclined to travel there, another who may not be able to get permission from his employer to travel there and yet another -- a former ESPN employee -- who was unwilling to speak to defendant without an attorney and hence may not agree to voluntary travel. Id. at 7-8. Finally, in its complaint ESPN mentioned four current or former X Games participants who wore allegedly infringing Quiksilver clothing, and Quiksilver anticipates calling some or all of these people at trial. See Compl. ¶ 22; Def. Mem. at 9. Of these participants, two live in Hawaii (one who has an office in

California), one lives in Australia and one lives in Wyoming. See Def. Mem. at 9. Thus, all four are closer to California than New York.

ESPN argues that allowing a transfer on such grounds, taken to its logical conclusion, would allow a transfer not only to any location where the X Games are held – including Aspen, Colorado, China, Brazil, Dubai and Mexico - but also in any locale where retail stores sell ESPN X Games merchandise. This argument misses its mark. First, sales outside the United States are beyond the purview of the Lanham Act. Second, Aspen employees are closer to California than New York. Third, the matter of merchandise sales is secondary to the primary issue of determining the senior rights-holder. Thus, evidence concerning design and development is of the utmost importance, and nearly all of Quiksilver's case is in California or nearby.

## b. Location of Relevant Documents and the Relative Ease of Access to Sources of Proof

In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly. Angelov v. Wilshire Bancorp, Slip Copy, 2007 WL 2375131, at *4 (S.D.N.Y. Aug. 14, 2007); New Line Productions, Inc. v. Thoene, No. 06 Civ. 13537(CM), Slip Copy, 2007 WL 2213080, at *4 (S.D.N.Y. Aug. 1, 2007). However, in infringement cases, it makes sense that "the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weigh in favor of transfer to that location." Millennium, L.P. v. Hyland Software, Inc., No. 03 Civ. 3900(DC), 2003 WL 22928644, at *4 (S.D.N.Y.

7

December 10, 2003). Moreover, Quiksilver argues that its relevant documents and evidence include extensive archival product, fabric samples and original hand drawings that go back 20 years and are located in the Central District of California. It argues that its fabric swatches and hand drawings "are irreplaceable and would be difficult to transport" across the country. See Milstein Decl. ¶ 9. Quiksilver does not explain what would make transport difficult.

Additionally, Quiksilver notes that its documents date back to the mid-1980s, so that many of them "will not be electronic." Id. ESPN's use of its X Games marks dates back to 1996, a time when electronic storage was more available and commonplace.

ESPN did not provide much detail about its own documents and records, except to say that its documents "are largely in New York, with others in Connecticut." See Plaintiff Memo in Opposition at 12.

"[C]ommon sense suggests that retaining this case in New York imposes some incrementally greater burden, however slight, on Defendants to copy or transport documents that they would not incur if the case proceeded in California." Herbert Ltd. Partnership, 325 F. Supp. 2d at 289; accord Fuji Photo, 415 F. Supp. 2d at 374-75. In the absence of more information about why it would be so difficult to transport documents to New York from California, this factor is at best neutral

### c. Locus of Operative Facts

"In actions alleging trademark infringement or unfair competition, courts in this district have held the locus of operative facts to be in the initially chosen

forum if acts of infringement, dilution, or unfair competition occur in that forum."
Kiss My Face Corp. v. Bunting, No. 02CIV2645 (RCC), 2003 WL 22244587, at
*3 (S.D.N.Y. September 30, 2003); see also Student Advantage, Inc. v.
International Student Exchange Cards, Inc., No. 00 Civ.1971(AGS), 2000 WL
1290585, at *7 (S.D.N.Y. September 13, 2000). For this reason, the Defendant
cannot sufficiently demonstrate that this factor weighs in favor of transfer.
Quiksilver does not dispute that its products are marketed and sold in New York.
See Def. Mem. at 13. It argues, instead, that it markets and sells in all major U.S.
cities.

Moreover, Quiksilver argues that the critical issue relates to whether it has
priority for the X-related marks as the senior rights-holder, and thus the locus of
operative facts is in the Central District of California. However, an argument
regarding where alleged infringing trademarks were developed, designed,
marketed or sold is simply not germane in regard to the locus of operative facts,
this Court has held. "Cases involving trademark infringement apply the
somewhat different standard enunciated in Student Advantage, and turn on
whether infringement, dilution, or unfair competition have occurred in the
transferor forum. Thus, if the allegedly infringing products are sold within the
Southern District of New York, even if sold elsewhere, there exists a sufficient
connection with this District." Kiss My Face, 2003 WL 22244587, at *3; see also
Student Advantage, 2000 WL 1290585, at *7.

Thus, this factor weighs in favor of retaining jurisdiction here.

### d. Convenience of the Parties

The convenience of the parties is often connected to the convenience of their respective witnesses. See, e.g., American Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006); Rephen v. Pitzele, No. 05 Civ. 7511(CM), 2006 WL 37170, at *3 (S.D.N.Y. January 03, 2006). While swapping one party's inconvenience for another does not support transfer, Dwyer v. General Motors Corp., 853 F. Supp. 690, 693 (S.D.N.Y. 1994), common sense dictates that when one party's witnesses are severely inconvenienced or, worse yet, unavailable because of an inability to compel attendance, the party itself is severely inconvenienced.

As noted above, Quiksilver would be hampered if its non-party testimony was limited solely to depositions and/or if some of its expected witnesses could not be compelled to testify in the Southern District. As ESPN has not explained in sufficient detail what inconvenience it would suffer if the case were transferred, the proper inference is that there would be no similar inconvenience. This factor also weighs in favor of a transfer. However, the analysis is grounded entirely on the first factor, and so the factor is duplicative.


### e. Availability of Process to Compel Attendance of Unwilling Witnesses

This factor weighs in favor of transfer. Quiksilver has offered evidence that five non-party witnesses might be unable or unwilling to travel, as noted above. All of these potential witnesses are California residents. ESPN argues that Quiksilver needed to supply an affidavit to support such claims, but this Court disagrees. "A party moving for transfer of venue for the convenience of

10

witnesses is not required to submit an affidavit from each witness." G. Angel Ltd. v. Camper & Nicholsons USA, Inc., No. 06 Civ. 3495(PKL), Slip Copy, 2008 WL 351660, at *4 (S.D.N.Y. February 08, 2008). Here, Quiksilver provided a sworn declaration identifying potential witnesses who might be unwilling or unable to testify in New York and briefly explained Quiksilver's reasons for believing there was a potential unwillingness or inability. See Milstein Decl. ¶ 4-6. In this Court, under these circumstances, it is sufficient that the moving party provides a detailed list of its expected witnesses, a description of their testimony, and whether they are available for trial. "When a party seeks the transfer on account of the convenience of witnesses under s 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir.1978), abrogated on other grounds by Pirone v. MacMillan, Inc., 894 F.2d 579, 585-86 (2d Cir.1990). See also American Eagle Outfitters, 457 F. Supp. 2d at 479 (where no specific witnesses were identified, defendants could not establish that this factor weighed in their favor); accord Kiss My Face, 2003 WL 22244587, at *4 (lack of evidence that potential witnesses would be unwilling to travel weighed against transfer).

Because most of the material non-party witnesses reside in California, they could be compelled to testify in California but not New York. See Fed. R. Civ. P. 45(b)(2). There are, to the best of this Court's knowledge, no non-party New York witnesses, so the fact that a California court could not compel non-parties to testify there appears to be irrelevant. Accordingly, this factor augurs in favor of transfer.

11

## f. Relative Means of the Parties

Both Quiksilver and ESPN agree that the factor of the parties' relative means is neutral. This Court agrees.

## g. Forum's Familiarity with the Governing Law

This factor weighs against transfer. "A forum's familiarity with the governing law, however, is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." Posven, C.A., 303 F. Supp. 2d at 405. This district and the Central District of California are familiar with federal copyright law and have substantial experience applying it.

"Where, as here, there are state law claims, the forum's familiarity with governing law supports retention of the action." NBA Properties, Inc. v. Salvino, Inc., 2000 WL 323257, at *9 (S.D.N.Y. March 27, 2000) (internal quotations omitted); see also American Eagle Outfitters, 457 F. Supp. 2d at 479 (where state law claims were related to Lanham Act, the factor did not warrant transfer of venue). Quiksilver argues that "federal courts commonly apply state substantive law, which may not be the law of the state in which the federal court sits." Kwik Goal, Ltd., 2006 WL 1517598, at *4. Further, defendant warns that the governing law factor should be afforded little weight because otherwise a plaintiff "could assert state law claims for no other reason than to ensure that the case cannot be transferred to a different district." See Def. Mem. at 17.

However, in this instance there is no evidence of such nefarious intentions on the plaintiff's part. This factor weighs slightly against transfer.

12

### h.  Weight Accorded a Plaintiff's Choice of Forum

The plaintiff's choice of forum is generally entitled to deference, unless the forum chosen is not the plaintiff's home forum.

ESPN is a Delaware corporation whose principal place of business is Bristol, Connecticut. The Southern District of New York is not plaintiff's home forum – the District of Connecticut is. However, ESPN has sufficiently established that many of its operations, including those germane to this case, are carried out in New York City, and that most of its potential witnesses work in New York. I am, therefore, inclined to give considerable weight to plaintiff ESPN's choice of forum, and only to disturb it if the other factors weigh strongly in favor of transfer.

### i.  Trial Efficiency and Interests of Justice Based on the Totality of the Circumstances

Although discovery has already commenced within this district, both Quiksilver and ESPN had agreed that the factor of trial efficiency is neutral. Additionally, there is no evidence this case could be resolved more expeditiously in the Central District of California, as neither court is lacking for work.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Weighing the factors, the court concludes that the convenience of non-party witnesses and the availability of process to compel their appearance at trial favor transfer, while the governing law, locus of operative facts and plaintiff's choice of forum augur in favor of retaining the case. The rest of the factors are neutral. Given the inconvenience to ESPN's party witnesses from transfer, and

13

the fact that non-parties who will not come to New York can be deposed in California, I conclude that the factors that weigh in favor of Quiksilver do not weigh so strongly as to overcome the plaintiff's choice of forum. Accordingly, the motion to transfer is denied.

This constitutes the decision and order of the Court.

Dated: September 15, 2008

_____
U.S.D.J.